UNITED STATES of America, Appellee,

v.

William Howard BOYER, Appellant.

No. 77–1609.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 3, 1978.

Decided April 5, 1978.

Rehearing and Rehearing En Banc
Denied June 2, 1978.

Robert D. Nienhuis, St. Louis, Mo., for appellant.

Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short (former U. S. Atty.), St. Louis, Mo. on the brief.

Before GIBSON, Chief Judge, and BRIGHT and ROSS, Circuit Judges.*

GIBSON, Chief Judge.

William Howard Boyer appeals from his conviction for the robbery of the Bank of House Springs, Missouri, in violation of 18 U.S.C. § 2113(a) and (d).[1] He contends that his arrest was unlawful and that he was not properly arraigned. For these reasons he urges that the items seized at the time of his arrest and statements made by him at that time and later during interrogation should have been suppressed. Boyer also claims that the District Court[2] should have granted his request that Agent Michael N. Murphy of the Federal Bureau of Investigation be sequestered while other witnesses were testifying. We affirm.

On May 20, 1977, the Bank of House Springs, Missouri, was robbed of $3,200 by a lone gunman. Photographs taken by surveillance equipment were immediately developed and displayed to several persons in the area. These persons, including law enforcement officers and relatives of Boyer, identified the photographed person as Boyer. A concerted effort was then made to apprehend him; in addition to evidence linking him to this robbery, it was known that a federal warrant for his arrest on a charge of unlawful flight to avoid prosecution had been issued in Arkansas on April 14, 1977.

On May 20, FBI agents went to the home of Sandra and Robert Wilson in Cedar Hill, Missouri. The Wilsons, out of fear that someone would be hurt, denied that Boyer was present in their home. In fact, he was present and had admitted the crime to them.

After receiving information from a confidential source that Boyer was there, sur-veillance of a residence at 745 Bayard Street in St. Louis was begun at 1:00 p. m. on May 23, 1977. At about 3:00 p. m. on that date FBI agents and St. Louis police approached the house. They were aware of Boyer's alleged involvement in the bank robbery, the outstanding federal arrest warrant issued in Arkansas and the fact that Boyer had been in the Wilson home when FBI agents visited it seeking him.

FBI Agent Michael Crowley went to a side entrance, knocked, identified himself and asked entrance. After ten to fifteen seconds without response, Crowley kicked the door open and entered. St. Louis Police Officer Robert Downey saw Crowley knock, went to the back door and entered, apparently without any separate request or knock. Inside, Officer Downey noticed a door leading to another room was in the process of closing; he pushed it open, saw Boyer standing next to a dresser and took him into custody and handcuffed him. Officer Downey observed a .38-caliber snub-nosed revolver in an open drawer near where Boyer had been standing.

After Boyer had been removed from the house, an agent re-entered and seized the revolver. In addition an open flight bag containing clothing of the same type as worn by the robber was seized after Boyer had requested that the agents retrieve it and take it to jail with him. Boyer was taken to the St. Louis Police Department Central Headquarters at approximately 3:30 p. m. Various administrative procedures followed, and at 4:30 p. m. an interview by FBI agents commenced which ended at approximately 5:45 p. m. Prior to this, Boyer was furnished an advice of rights form, which he read and stated he understood, but refused to sign. He did agree to answer questions. Statements he made at this time were introduced against

---

* This case was submitted to a panel composed of Chief Judge Gibson and Circuit Judges Ross and Webster on January 9, 1978. By order of the court, that submission was vacated and the case was resubmitted on February 3, 1978, to the present panel on the designated record of the District Court, the briefs of the parties and the transcript of the oral argument made on January 9.

1. Boyer was sentenced to a term of 25 years' imprisonment.

2. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

him at trial. Boyer was taken before a United States magistrate at approximately 11:30 a. m. on May 24, 1977, the day following his arrest.

The items seized from the Bayard Street residence were taken without a search warrant. Thus, they are admissible only if they come within an exception to the warrant requirement. The Government contends that these items were properly seized as part of a search incident to a lawful arrest and that they were in plain view of the officers who had a legal right to be in the room. Under either theory the legality of the arrest is crucial.

Boyer does not challenge the arrest on constitutional grounds; rather he contends that 18 U.S.C. § 3109 [3] and § 544.200 Mo. Rev.Stat.[4] were violated by the officers breaking in to effect the arrest without first "announcing their purpose" and "being refused admittance."

It is not clear whether Missouri law or federal principles govern the validity of this arrest. The Supreme Court has repeatedly stated that in the absence of constitutional claims, the validity of an arrest depends on the law of the state where the arrest occurs. *United States v. Watson*, 423 U.S. 411, 420–21 n. 8, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Miller v. United States*, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *United States v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). *Di Re* is similar to this case in that it involved a state officer making an arrest, in the presence of federal agents, for a federal offense. The Supreme Court held that

New York law applied; under that law the arrest was invalid and items seized should have been suppressed.

However, the Government has in its brief conceded that the requirements of 18 U.S.C. § 3109 govern this arrest. In making this concession it apparently relied on statements in *Sabbath v. United Sates*, 391 U.S. 585, 588, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), and *Wong Sun v. United States*, 371 U.S. 471, 482–84, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Both of these cases cited *Miller, supra*, without noting that in *Miller* the validity of the arrest depended on local law and 18 U.S.C. § 3109 was cited only as a statement of the appropriate criteria under District of Columbia law.

Since Boyer asserts the arrest was unlawful under both Missouri and federal law, we will consider each.[5] In *State v. Novak*, 428 S.W.2d 585 (Mo.1968), the court upheld a forcible entry of an apartment to arrest the tenant. The court quoted extensively from the police officers' testimony; it does not appear that the Missouri court required any more than identification by the officers and a request for entry. In *State v. Bryson*, 506 S.W.2d 358 (Mo.1974), the court decided that the legality of the defendant's arrest was not preserved for appeal or crucial to the case. The court did suggest that the particular circumstances of a case could relax the need to state a purpose on the part of officers who identified themselves, knocked and were denied entry. In light of these statements by the highest court of Missouri, we are convinced that

---

**3.** 18 U.S.C. § 3109 provides:

> *Breaking doors or windows for entry or exit—*
> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

It is immediately apparent that the statute only applies to execution of search warrants. However, as we note in the text, the Supreme Court has utilized similar standards in some cases of entry for arrest purposes. The precise limits of that federal common law extension are not clear.

**4.** This Missouri statute has been in effect at least since 1855. It provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door or window of a dwelling house or other building, or any other enclosure, if, after notice of his office and purpose, he be refused admittance.

§ 544.200 Mo.Rev.Stat.1969.

**5.** In *State v. Bryson*, 506 S.W.2d 358, 361 (Mo. 1974), the Missouri Supreme Court noted that 18 U.S.C. § 3109 and § 544.200 Mo.Rev.Stat. 1969 are essentially similar.

Missouri law, if applicable, would sanction Boyer's arrest.

Nor is Boyer assisted by reference to the principles of 18 U.S.C. § 3109. In *Miller, supra,* 357 U.S. at 310, 78 S.Ct. at 1196, the Supreme Court recognized that if the officers are justified "in being virtually certain that the *petitioner* already knows their purpose so that an announcement would be a useless gesture" (our emphasis), the requirement that the officers state their purpose might be relaxed. This was strengthened in *Sabbath, supra,* 391 U.S. at 591 n. 8, 88 S.Ct. at 1759, where the Court approved the limited exceptions contained in Justice Brennan's separate opinion in *Ker v. California,* 374 U.S. 23, 47, [83 S.Ct. 1623, 1636, 10 L.Ed.2d 726] (1963).[6] Those exceptions include, "where the persons within already know of the officers' authority and purpose."

■ In applying these exceptions we conclude that the knowledge of the person arrested is of greater importance than the knowledge of other persons who may be in the residence. Any other rule would tend to give an individual greater freedom from arrest in the home of a third person than he enjoys in his own home.[7] The exceptions to the announcement of purpose by arresting officers depend on the officers' knowledge and belief. In the case of an armed felon avoiding arrest, police could often be sure

that he knew the purpose of their entry; they would, however, have few indicia on which to determine the knowledge of third persons, if any, in the house.

There can be no doubt that Boyer knew the purpose for which the officers sought entrance to the Bayard Street residence. Boyer had been present in a home in Cedar Hill, Missouri, three days earlier when FBI agents visited that home seeking him in connection with bank robbery. In addition, a warrant for unlawful flight to avoid prosecution was outstanding in Arkansas. Boyer's assertion that he did not hear Agent Crowley's knock and thus did not *know* of the presence of officers is not persuasive. Under the possible exception stated in *Miller,* only the officer's "virtual certainty" is required. Even if knowledge is the rule under *Ker,* the matter is one of credibility between the officers' testimony that Agent Crowley knocked and identified himself and that of the defendant and his witness that he did not. The magistrate who heard the suppression motion and the District Court decided the credibility issue in favor of the Government; we find no error in that determination.[8]

■ Since we have found the arrest to have been lawful,[9] the items observed at the arrest scene were properly seized under the plain view doctrine and the search incident to arrest exception to the requirement

**6.** The exceptions in *Ker* were stated as applying to a possible fourth amendment right to be secure in a private home. In *Ker, Miller, Wong Sun* and *Sabbath* the challenged entry occurred at the defendant's place of residence. In the present case Boyer did not reside at the Bayard Street house. The parties have presented this issue as though the same standards apply as would if Boyer resided at 745 Bayard Street.

**7.** We recognize that in criminal proceedings the practical result of these statutory and common law limitations on arrest methods is the suppression of relevant evidence where the rules are violated. We perceive no reason to suppress evidence when the arrest occurs at the residence of a third party if the same evidence would be admissible if the arrest had occurred at the home of the accused.

**8.** The additional circumstance of Boyer being sought for armed bank robbery adds weight to the relaxation of the officer's pre-entry require-

ments. An officer should not be required to stand at the door for an extended period of time while an armed suspect prepares to shoot the officer or take him hostage.

**9.** In this criminal proceeding, only the rights of Boyer are involved. We do not determine or limit in any way the rights of the other occupants of the Bayard Street house or its owner. Because of the important individual property and liberty interests of those third persons, we do not view the extraordinary facts that excused the officers' failure to state their purpose *vis-a-vis* Boyer as having the same impact on the third persons. Those issues remain for other litigation. The existence of potential civil claims by third parties serves as additional deterrence to potential police misconduct and excesses.

of a search warrant. Similarly we reject Boyer's contention that the incriminating statements he made were the fruits of an unlawful arrest.

 Boyer also challenges the admission of those statements because of delay in taking him before a magistrate. Under Rule 5(a) of the Federal Rules of Criminal Procedure, an arrested person has the right to be taken before a magistrate for arraignment "without unnecessary delay." The Government has adequately explained the delay;[10] it was not unnecessary. *United States v. Ortega,* 471 F.2d 1350, 1362 (2nd Cir. 1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Lovejoy,* 364 F.2d 586, 589 (2nd Cir. 1966); *United States v. Hall,* 348 F.2d 837, 842 (2nd Cir.), *cert. denied,* 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965); *Evans v. United States,* 325 F.2d 596, 603 (8th Cir.), *cert. denied,* 377 U.S. 968, 84 S.Ct. 1649, 12 L.Ed.2d 738 (1963). Finally, Boyer challenges the admission of his statements by claiming he was under the influence of heroin to the extent that the statements were not voluntary. We find that the District Court's finding of voluntariness was not clearly erroneous.

 The last issue raised is whether the District Court erred in not excluding FBI Agent Murphy from the courtroom during the testimony of other witnesses. Boyer requested Murphy's exclusion under Rule 615 of the Federal Rules of Evidence. However, Rule 615 "does not authorize exclusion of * * * an officer or employee of a party which is not a natural person designated as its representative by its attorney * * *." The Senate Judiciary Committee made it clear that this exception was intended to apply to the situation in this case. Report on the Federal Rules of Evidence, Committee on the Judiciary, United States Senate, 93rd Cong., 2d Sess. 26 (1974), *reprinted in* 3 J. Weinstein & M.

Berger, *Weinstein's Evidence—United States Rules,* 615–1 and 2 (1976). There is no merit in Boyer's contention on this issue.

We have examined all of the allegations of error pressed by Boyer and have found them to be meritless. The evidence of guilt is overwhelming; he was photographed in the process of the robbery, identified by eyewitnesses and reported to have admitted the crime to FBI agents and his friends.

The judgment appealed from is affirmed.

ROSS, Circuit Judge, concurring.

I concur in the opinion of Chief Judge Gibson. It is obvious in this case that the FBI agent who kicked in the door did so with little or no regard for the rights of the tenant of the Bayard Street residence where Boyer was visiting. If the search had uncovered any items resulting in the arrest of the tenant, I would not hesitate to hold that the search was unreasonable and that the fruits thereof should have been suppressed.

However, as pointed out by footnote 9 of the majority opinion, we are concerned here only with the rights of Boyer. His rights under the fourth amendment are personal and he may not move to suppress the evidence seized in the search based on the rights of a third party. *See Brown v. United States,* 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.E.2d 208 (1973); *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Simmons v. United States,* 390 U.S. 377, 389, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Heisman,* 503 F.2d 1284, 1290 n. 4 (8th Cir. 1974).

---

**10.** The processing of Boyer at the police station continued for a reasonable period of time until it was too late to secure the services of a magistrate for an arraignment late in the afternoon. The questioning of Boyer was not extensive. The questioning officer had an obligation to make an attempt to identify confederates and to locate the bank loot. Boyer was not questioned after 5:45 p. m. and was taken before a magistrate the next morning.