UNITED STATES of America, Appellee,

v.

William Julius KULCSAR, Appellant.

No. 78-1277.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Nov. 17, 1978.

---

Earl P. Gray, Gray, Gill & Brinkman, St. Paul, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on the brief.

Before ROSS and HENLEY, Circuit Judges, and MARKEY,* Chief Judge.

ROSS, Circuit Judge.

William Julius Kulcsar appeals his two-count conviction for distribution of cocaine in violation of the Drug Abuse Prevention and Control Act. 21 U.S.C. § 841(a)(1).[1]

Kulcsar contends on appeal that federal agents of the Drug Enforcement Administration (DEA) who arrested him after forcing entry into his home violated the provisions of 18 U.S.C. § 3109 and the fourth amendment. He therefore claims error in the denial of his motion to suppress physical evidence and statements obtained in connection with the arrest.

Finding that the agents sufficiently complied with § 3109 and that exigent circumstances justified the warrantless entry, we affirm.

DEA agent Curtis Workman purchased two and one-half ounces of cocaine from Donald Ploof in two separate transactions on April 19, 1977. Workman paid for the first ounce of cocaine with $1800 in recorded government funds. After the first sale, Ploof, who was selling the narcotics "on a front" or on credit for his source, returned to his supplier's residence to turn over the proceeds from the first sale and to obtain additional cocaine. DEA agents followed Ploof to 3033 Northeast Tyler, Minneapolis, and attempted to place the building under surveillance. After the second sale, agent Workman arrested Ploof and questioned him as to the source of the narcotics. Ploof named the defendant, William Kulcsar, as his supplier.

The agents then went to 3033 Tyler to question Kulcsar. As agents Workman and Bloch approached the house, Workman ob-

served a man fitting Kulcsar's description look out of a second floor window and duck back from view. The agents concluded that Kulcsar was inside the building and that he had become aware of their presence.

The house in question was a small, two-family dwelling with two front doors, one leading to the downstairs apartment occupied by Darlys Brown and the other opening onto a stairway which led to Kulcsar's upstairs apartment. DEA agent Anderson and a uniformed police officer joined agents Workman and Bloch who were already standing at Kulcsar's front door. The agents knocked loudly several times and announced "police." When they received no response, agent Anderson knocked on Darlys Brown's door. She told the agents that she did not know whether Kulcsar was at home and that she did not have a key to his apartment. The agents again knocked on Kulcsar's front door and again conversed with Darlys Brown.

After knocking a third time for several minutes and announcing "police," the agents forced the front door. At the top of the stairs they knocked on the door to Kulcsar's apartment and again announced "police officer." After waiting a few seconds for a response, they forced the door open. They found Kulcsar in the apartment, arrested him and informed him of his rights. The agents then secured the apartment and initiated proceedings for a search warrant. After the arrest, Kulcsar made incriminating statements and showed the agents narcotics in his possession.

## I.

■ Kulcsar urges that the agents failed to comply with 18 U.S.C. § 3109[2] which

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, imposed a general sentence on both counts of two years with a special parole term of three years.

2. § 3109 provides as follows:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Although expressed in terms of entry to execute a search warrant, § 3109 also applies to forcible entries to effect an arrest, whether

requires federal officers to knock and announce their authority and purpose as a precondition to forcing entry into private premises. At least one circuit has decided that breaking in without observing these statutory requirements may also constitute an unreasonable intrusion in violation of the fourth amendment. *United States v. Murrie,* 534 F.2d 695, 698 (6th Cir. 1976).

While the agents knocked and announced "police" repeatedly before forcing both the front door and the door to Kulcsar's apartment,[3] they failed to state expressly that they were there to arrest him. However, our recent decision in *United States v. Boyer,* 574 F.2d 951 (8th Cir. 1978) establishes that announcement of purpose is excused when it would be a useless or futile gesture. If "the persons within already know of the officers' authority and purpose" or "if the officers are justified 'in being virtually certain that the petitioner already knows their purpose'" announcement of purpose is unnecessary. *Id.* at 954, *citing Ker v. California,* 374 U.S. 23, 47, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Miller v. United States,* 357 U.S. 301, 310, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Thus, "[t]he exceptions to the announcement of purpose by arresting officers depend on the officers'

knowledge and belief." *United States v. Boyer, supra,* 574 F.2d at 954. The district court determined that the agents were certain Kulcsar knew their purpose. This finding was not clearly erroneous.[4] Having received no response when one was reasonably to be expected, the agents had authority to enter under § 3109.[5] *United States v. Allende,* 486 F.2d 1351, 1353 (9th Cir. 1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974); *United States v. Blake,* 484 F.2d 50, 57 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

## II.

Although an arrest without a warrant in a public place is lawful if based upon probable cause, *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), "whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest" remains unresolved. *Id.* at 418 n. 6, 96 S.Ct. at 825. We are not asked to decide whether probable cause alone would permit entry into a suspect's residence to effect his arrest, as the district court determined that exigent circumstances[6] existed justifying the agents' warrantless entry. We affirm the district court's finding of exigency.

upon probable cause or with a warrant. *Sabbath v. United States,* 391 U.S. 585, 588, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *United States v. Blake,* 484 F.2d 50, 57 n. 6 (8th Cir. 1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

3. Kulcsar and Darlys Brown testified that they did not hear the officers knock and announce their authority. The district judge did not find this testimony credible. His findings on the motion to suppress are subject to the clearly erroneous standard of review, and we find his conclusions supported by the record. *United States v. Boyer,* 574 F.2d 951, 954 (8th Cir. 1978); *United States v. Woods,* 560 F.2d 660, 663 (5th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978); *United States v. Wysong,* 528 F.2d 345, 348 (9th Cir. 1976).

4. Within hours, Kulcsar had completed two narcotics transactions. His agent, Ploof, had failed to return with payment after the second sale. When Kulcsar saw two agents approaching his house, he ducked out of sight. Three federal agents and a uniformed policeman

knocked loudly and persistently on his door. These facts justified the officers' belief.

5. They also had statutory authority to effect a warrantless arrest. 21 U.S.C. § 878(3).

6. *See Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978). "Our decisions have recognized that a warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant. *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (warrantless entry of house by police in hot pursuit of armed robber); *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (warrantless and unannounced entry of dwelling by police to prevent imminent destruction of evidence.)" *See also Roaden v. Kentucky,* 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). "Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation."

By 6:30 p. m., as the result of information provided by Ploof, the DEA agents had probable cause to arrest Kulcsar for distribution of cocaine.[7] At this time, a federal magistrate was not readily available.

The agents had difficulty keeping Kulcsar's house under surveillance without being visible from inside. Ploof had indicated the existence of a person named "Dave" who was to receive payment from Kulcsar, and the agents were concerned about Dave's possible arrival and departure with the marked government funds.[8]

Kulcsar was known to be dealing in cocaine from his home, and the agents reasonably believed that narcotics would be on the premises. Had they waited the several hours the record indicates it would have taken to obtain a warrant, Ploof's failure to return with the proceeds of the second sale could be expected to warn Kulcsar that the sale had gone wrong. *See United States v. Shima*, 545 F.2d 1026, 1028 (5th Cir.), *cert. denied*, 434 U.S. 996, 98 S.Ct. 632, 54 L.Ed.2d 490 (1977). Thus the agents faced a significant risk that delay would result in alarming Kulcsar, precipitating removal or destruction of the narcotics or government funds.

The presence of evidence reasonably believed to be in imminent danger of removal or destruction is well recognized as a circumstance which may permit immediate police action. *See, e. g., Ker v. California*, 374 U.S. 23, 40–41, 47, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *United States v. Flickinger*, 573 F.2d 1349, 1354–55 (9th Cir. 1978); *United States v. Gardner*, 553 F.2d 946, 948 (5th Cir. 1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978); *United States v. Shima, supra*, 545 F.2d at 1028;

*United States v. Delguyd*, 542 F.2d 346, 351–52 (6th Cir. 1976); *United States v. Wysong*, 528 F.2d 345, 348 (9th Cir. 1976); *United States v. Blake*, 484 F.2d 50, 54–56 (8th Cir. 1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974). The officers were not required to wait until evidence was "actually in the process of destruction" before entering. *United States v. Blake, supra*, 484 F.2d at 55.

■ In *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385, 392–93 (1970), the District of Columbia Circuit identified certain factors helpful in determining whether exigent circumstances exist which would justify entry without a warrant to arrest the occupant of a private dwelling. We applied these considerations in *Salvador v. United States*, 505 F.2d 1348, 1351–52 (8th Cir. 1974).

The criteria are:
1) that a grave offense is involved;
2) that the suspect is reasonably believed to be armed;
3) that a clear showing of probable cause exists to believe the suspect committed the crime in question;
4) that there is a strong reason to believe the suspect is in the premises being entered;
5) that a likelihood exists that the suspect will escape if not swiftly apprehended; and
6) that the entry, though not consented to, is made peaceably.

The only factor which is not relevant to Kulcsar's arrest is the reasonable belief that the suspect was armed or violent.

In assessing whether the agents acted reasonably, we find it significant that be-

7. Probable cause consists of "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975), *citing Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

8. Ploof told the agents that "Dave" had advanced the cocaine to Kulcsar. The possibility of Dave's arrival at any time increased the

urgency of the situation. Shortly after Ploof's arrest, a man unknown to the agents knocked on Kulcsar's front door and was admitted. When the visitor left, the agents detained him, fearing he might be Dave removing the marked money. He was subsequently identified as a marijuana customer of Kulcsar. The traffic in and out of Kulcsar's house increased both the need to keep the building under close surveillance and the difficulty of doing so without being observed.

fore deciding to approach the house, they telephoned an Assistant United States Attorney for advice. In addition, their efforts to obtain a response by knocking and announcing their authority not only demonstrated good faith, but provided statutory authority to enter. 18 U.S.C. § 3109. We have previously held that a suspect's failure to respond to such announcement may contribute to a finding of exigency justifying a warrantless entry.[9] *United States v. Easter*, 552 F.2d 230, 234 (8th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977).

On this record we are satisfied that the district court did not err in denying Kulcsar's motion to suppress.

Affirmed.

---

**9.** Kulcsar was clearly inside the building. He had responded to a knock on his front door when Ploof returned after the first sale and later when the marijuana purchaser sought admittance. Furthermore, agent Workman saw Kulcsar retreat from a window as the agents approached the house.

At least one circuit has recognized a "suspect's knowledge that he is at risk of immediate apprehension as an exigent circumstance justifying immediate action." *United States v. Flickinger*, 573 F.2d 1349, 1355 (9th Cir. 1978). A suspect who realizes that he is in danger of immediate apprehension is clearly more likely to destroy evidence, to attempt an escape, or to engage in armed resistance than is a suspect who is taken unawares. By acting promptly, however, the police can substantially mitigate the possibility of such occurrences. *Id.*