

# SUPREME COURT OF MISSOURI
# en banc

STATE OF MISSOURI, )
)
Respondent, )
)
v. ) No. SC94081
)
CHRISTOPHER ERIC HUNT, )
)
Appellant. )
)

### APPEAL FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
The Honorable Keith Sutherland, Judge

*Opinion issued December 23, 2014*

PER CURIAM

In the course of arresting a suspect on two pending felony arrest warrants for the manufacture of methamphetamine and child endangerment, a deputy sheriff made a forced entry into a residence and physically subdued and arrested the suspect. As a result of the arrest, the deputy was charged and convicted of three crimes: burglary for entering the residence with intent to commit an assault; property damage for kicking in the door during the entry; and assault for the physical struggle that took place between the deputy and the suspect.

The evidence on the burglary charge under section 569.160[1] was insufficient because it did not establish both the required elements of a knowingly unlawful entry and the intent to commit a crime. The suspect had active warrants, and the deputy had arrest authority. The lawfulness of the entry, however, centered on whether he had a reasonable belief that the suspect was inside the residence at the time he entered. If, as the State argued, the deputy did not reasonably believe the suspect was inside, then he could not have formed the intent to assault the suspect. On the other hand, if he did have such belief, then he subjectively thought he had authority to enter and did not act knowingly unlawfully. The evidence could not establish both elements of section 569.160. The burglary conviction is reversed.

Similarly, the evidence on the property damage charge under section 569.120 was insufficient. The damage to the residence occurred during the deputy's forced entry to arrest the suspect. Section 544.200 privileges officers to break doors and windows to effectuate arrests when police presence is first announced and admittance is refused. As that statute was complied with, the deputy could not be convicted of conduct for which he was privileged under the law. The property damage conviction is also reversed.

Finally, although the sufficiency of the evidence on the third-degree assault charge under section 565.070 was not challenged, the jury instructions were misleading and were plainly erroneous. The assault conviction is reversed and remanded for a new trial or other further proceedings.

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

## I. Factual Background

The parties disagree about many of the facts, but viewing all evidence in the light most favorable to the verdict, the following narrative emerges:

Philip Alberternst (the suspect) was a known drug manufacturer and dealer in the Montgomery County area. The suspect had two active felony arrest warrants for the manufacture of methamphetamine and child endangerment. He had been hiding out alone for two weeks at a friend's trailer in the woods of Montgomery County, yet his exact location was unknown to law enforcement.

Efforts to locate and arrest the suspect were underway by the sheriff departments of Montgomery and Warren counties as well as the East Central Drug Task Force (EC-DTF) and the St. Charles County Regional Drug Task Force (St. Charles DTF).[2] Deputy Christopher Hunt (Deputy Hunt) was a member of the St. Charles DTF.

Ultimately, the suspect's former girlfriend (the informant) met with detectives from Warren County and St. Charles DTF and agreed to disclose the suspect's location to law enforcement. At this meeting, the informant asked that Deputy Hunt not be involved in the arrest because she feared for the suspect's safety based on past encounters when Deputy Hunt had arrested the suspect. Previously, while released from jail, the suspect reneged on a deal with Deputy Hunt to act as a confidential informant. On another occasion, Deputy Hunt allegedly backhanded the suspect while he was in handcuffs.

---

[2] EC-DTF operates in Montgomery, Warren, and Audrain counties. St. Charles DTF and EC-DTF are multidistrict enforcement groups operating under the authority of section 195.505, RSMo Supp. 2013. These groups possess the authority to make arrests anywhere in the state.

Detectives told the informant that Deputy Hunt would not be a part of the operation. However, no evidence at trial indicated that Deputy Hunt was ever informed of this.

The day of the operation, the informant was given several boxes of pseudoephedrine to deliver to the suspect to protect her cover.[3] She was concerned that the suspect, who had been awake for several consecutive days cooking and using methamphetamine, would not believe that she would come to him empty handed. That night, the informant contacted the detectives and provided the address of the trailer, informing them she was inside with the suspect.

Other officers were contacted to assist with the operation. In total, 10 officers were present: one from Montgomery County, three from Warren County, two from EC-DTF, and three from St. Charles DTF. The officers met at a staging location near the trailer to discuss the approach. The informant's car was parked in front of the trailer.

The officers had felony arrest warrants for the suspect, but they did not have a search warrant for the trailer. They decided to conduct a "knock and talk" in hopes that someone might answer the door and they could proceed from there. The trailer had a closed-in porch built onto the front. Both the trailer and the porch had several windows, all of which were covered to some degree. The front door into the trailer was accessible only through the porch, which itself had an exterior door.

Officers banged on the exterior porch door and announced "sheriff's department, answer the door," but no one answered. Inside, the informant heard this but did not

---

[3] Pseudoephedrine is a key ingredient in the manufacture of methamphetamine.

intend to open the door. The officers shined flashlights into the windows and porch. Seeing no one, they dropped back into a perimeter some 20 yards away.

At this point, Deputy Hunt arrived. Although he had been aware of the existence of an effort to arrest the suspect, he had been working in St. Charles County that day and was not a part of the operation's planning or initial stages. He drove to the scene after a fellow St. Charles DTF member contacted him and told him of the pending arrest. Officers testified that when Deputy Hunt arrived, he exited his truck, nodded to one of the officers, put on a tactical vest, and approached the trailer and kicked in the exterior porch door, displacing the door from the frame.

Deputy Hunt testified at trial that, before he kicked in the porch door, he looked in the porch windows and noticed black trash bags and a partially open backpack containing tubing and rubber containers with liquid inside them. Based on his experience, he believed these were signs of a mobile methamphetamine lab. Other officers testified they could not see anything on the porch prior to the entry.

Several officers followed Deputy Hunt into the porch area and noticed items consistent with a methamphetamine lab. One officer testified he could smell a "faint odor of maybe a chemical smell." Eventually Deputy Hunt opened the interior door leading into the trailer and the other officers entered. Officers on the perimeter entered when they heard yelling and screaming coming from inside.

Inside, the informant was on the couch covered in a blanket. The officers secured her, and she told them the suspect was in the bathroom. The suspect was naked but wrapped in a towel. The suspect initially attempted to close the door on the officers but

4

eventually stuck his hands out the bathroom door. Deputy Hunt then took him to the ground in the hallway. The suspect was "passively resisting arrest" and not complying with their commands. Deputy Hunt, the three other St. Charles officers and a Montgomery County officer held the suspect down. Deputy Hunt and others employed "control tactics," striking the suspect in the "upper area, shoulders and head area." EC-DTF and Warren County officers testified that the suspect was flailing his arms and kicking his legs, but that in their opinion the movements were defensive. One officer heard Deputy Hunt shout "you want to kick my a\*\* now mother f\*\*\*\*\*." After the suspect was handcuffed, the control strikes stopped. He was taken to the hospital and released immediately, receiving no stitches. After the scene was secured, substantial evidence of a mobile methamphetamine manufacturing lab was seized both from the porch and inside the trailer, including a pile of crushed up pseudoephedrine.

Deputy Hunt was charged in Montgomery County with first-degree burglary for unlawful entry into the residence with intent to commit assault, second-degree property damage for breaking down the door to enter the residence, and third-degree assault for striking the suspect during the arrest. He was convicted by a jury of all three counts and sentenced to a total of five years in prison.[4] Deputy Hunt appeals the convictions.[5]

---

[4] All of the St. Charles DTF officers were charged with assault in connection with the operation. The Montgomery County officer, who also participated in subduing and arresting the suspect, was not charged.

[5] This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, section 10.

## II. Issues on Appeal

Deputy Hunt argues that the trial court erred in failing to sustain his motion for acquittal and in submitting the charges of first-degree burglary and second-degree property damage to the jury because there was insufficient evidence from which reasonable jurors could find guilt beyond a reasonable doubt. He does not challenge the sufficiency of the third-degree assault evidence but, rather, argues that the jury instructions were plainly erroneous, mandating a new trial. Finally, he argues the trial court prejudicially erred in limiting the testimony of Corporal Brian Clay at trial.[6]

## III. Sufficiency of the Evidence

### A. Standard of Review

Appellate review of sufficiency of the evidence is limited to whether the State has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt. *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011). This Court does not reweigh the evidence but, rather, considers it in the light most favorable to the verdict and grants the State all reasonable inferences. *Id.* at 509. Contrary evidence and inferences are disregarded. *Id.* The Court may not supply missing evidence or give the State the benefit of unreasonable, speculative, or forced inferences. *State v. Langdon*, 110 S.W.3d 807, 811-12 (Mo. banc 2003).

---

[6] Other claims of error are not addressed as they are resolved by the disposition in this opinion.

## B. First-Degree Burglary

Section 569.160(3) provides, in relevant part:

> 1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
> …
>
> (3) There is present in the structure another person who is not a participant in the crime.

Section 569.160. There are two distinct burglary elements that are relevant here: (1) knowingly enters unlawfully, and (2) an intent to commit a crime therein, i.e., the alleged assault.[7] *See State v. Cooper*, 215 S.W.3d 123, 127 (Mo. banc 2007).

To satisfy the first element, a person enters unlawfully when he is not licensed or privileged to do so. Section 569.010(8). If a person is privileged to enter, he is not guilty of burglary, regardless of any crimes he may commit therein. *State v. Chandler*, 635 S.W.2d 338, 341 (Mo. banc 1982). The mens rea "knowingly" modifies the phrase "enters unlawfully." Section 569.160. A person acts "knowingly" with respect to his conduct or attendant circumstances when he is "aware of the nature of his conduct or that those circumstances exist." Section 562.016.3(1). Accordingly, a person "enters unlawfully" when he is aware he has no privilege to enter. *Chandler*, 635 S.W.2d at 342. Knowledge is typically inferred from circumstantial evidence because direct evidence is rarely available. *State v. Letica*, 356 S.W.3d 157, 166 (Mo. banc 2011).

---

[7] The parties agree that subdivision (3) of section 569.160 was satisfied because the informant was present inside the trailer when Deputy Hunt entered.

To convict, the State had to present sufficient evidence, direct or circumstantial, that Deputy Hunt knew he had no authority to enter the trailer. The analysis must focus on Deputy Hunt's subjective belief.[8] In other words, the State had to present sufficient evidence that Deputy Hunt *actually knew* he had no authority—not just that he merely had a mistaken belief or that he guessed wrong under the circumstances.

The lawfulness of the entry centers on whether Deputy Hunt had a reasonable belief that the suspect was inside the residence when he entered. The other officers generally agreed that if they had seen the suspect inside, the arrest warrant would have provided authority to enter, even though the residence did not belong to the suspect and the officers did not have a search warrant for the residence. A reasonable belief that the suspect was inside was, therefore, legally relevant to the question of Deputy Hunt's authority to enter.[9] If Deputy Hunt did not actually believe the suspect was inside at the time he entered, as the State argues he did not, then he knew he had no authority to enter.

Yet, even if the jury accepted the State's position on the unlawful entry, the charge was still not submissible. This is because in addition to the knowingly unlawful entry

---

[8] This is in contrast to the objective standard of reasonableness that governs Fourth Amendment law. *State v. Lovelady*, 432 S.W.3d 187, 191 (Mo. banc 2014). The parties discuss at length in their briefs whether Deputy Hunt's conduct actually violated the Fourth Amendment. That is not an issue in this case. In reviewing sufficiency of the evidence, it is important to keep the constitutional and criminal standards separate. Evidence that might be relevant to objective reasonableness in a suppression hearing or a civil damages action under 42 U.S.C. § 1983 is not necessarily probative of Deputy Hunt's mental state. If there was insufficient evidence of Deputy Hunt's mens rea, the convictions cannot stand even if he committed a constitutional violation.

[9] The parties cite to precedent of the United States Supreme Court in an effort to answer the question of whether an arrest warrant combined with a reasonable belief that the subject of that warrant is inside a third-party residence gives officers the limited authority to enter and make an arrest. This discussion largely misses the mark because the question in this case is not whether Deputy Hunt's entry *actually was* unlawful but, rather, whether he *knew* it was unlawful.

element, the State also had to present sufficient evidence that, at the time of entry, he had the intent to assault the suspect as opposed to arresting him.

It is here that submissibility fails because the evidence in this case cannot establish both a knowingly unlawful entry and an intent to commit assault. If Deputy Hunt had a reasonable belief that the suspect was inside the residence, then his entry was not knowingly unlawful under section 569.160. This is why the State argues that Deputy Hunt did not have such belief. But therein lies the "catch-22," because if he did not actually believe the suspect was inside the residence, then he could not form the intent to commit assault. In other words, the burglary elements are mutually exclusive here because the predicate crime is assault.

In light of the record and viewing all evidence in the light most favorable to the verdict, the trial court erred in submitting first-degree burglary to the jury and in failing to sustain Deputy Hunt's motion for acquittal. There was insufficient evidence from which reasonable jurors could find each element of the offense beyond a reasonable doubt. The conviction is reversed.

### C. Second-Degree Property Damage

Deputy Hunt also challenges the sufficiency of the evidence to submit the property damage count to the jury. Section 569.120 provides, in relevant part, that a person commits property damage if he "knowingly damages property of another." The required mental state under the statute is "knowingly." Although there is little doubt that Deputy Hunt acted knowingly when he kicked in the porch door to enter the residence, law

enforcement officers are afforded a privilege to damage another's property under certain circumstances:

> To make an arrest in criminal actions, the officer may break open any outer or inner door or window of a dwelling house or other building, or any other enclosure, if, after notice of his office and purpose, he be refused admittance.

Section 544.200. The privilege applies to criminal arrests when the officer is first refused admittance after announcing his office and purpose, commonly referred to as a "knock and announce." Here the record reflects that the section 544.200 privilege existed because there was sufficient evidence for the jury to believe that both conditions for its availability were met.

First, in order for the privilege to apply, Deputy Hunt must have been making an arrest in a criminal action. This condition was satisfied. Deputy Hunt was a member of a multidistrict enforcement group and had power of arrest. He kicked in the door with the purpose of arresting the suspect on two felony arrest warrants, and that arrest occurred. The State argues that the privilege was unavailable because Deputy Hunt intended to assault the suspect, not arrest him. However, the fact that a physical altercation took place that was later alleged to be an assault does not negate Deputy Hunt's purpose to effect an arrest. Property damage does not require any predicate crime. In other words, unlike burglary, property damage was not dependent on an intent to commit assault.

Second, section 544.200 requires a knock and announce. Officers testified that, as they approached the trailer, they banged on the door and announced

10

"sheriff's department, answer the door." The informant testified that she saw police lights and heard the officers announce their presence, but she did not intend to open the door. The State responds that this did not satisfy the statute because Deputy Hunt did not himself perform the knock and announce. However, there is no requirement in section 544.200 that the officer who knocks and announces be the same one who enters.[10]

The State counters that, even if Deputy Hunt could rely on the other officers' knock and announce, their "announce" was defective because they declared their *presence* but not their *purpose* to arrest the suspect. In *United States v. Boyer*, 574 F.2d 951, 952 (8th Cir. 1978), police and FBI agents approached a third-party residence based on a confidential informant's tip that a robbery suspect was hiding inside. An agent knocked on the door, identified himself, and demanded entry. *Id.* After 10 to 15 seconds with no response, the agent kicked in the door and entered. *Id.* The Eighth Circuit, applying Missouri law, found that the agent complied with section 544.200 and noted that the particular circumstances of a case "could relax the need to state a purpose on the part of officers who identified themselves, knocked and were denied entry." *Id.* at

---

[10] Section 544.200 refers to "the officer" in the singular. However, Missouri statutory construction dictates that when a statute refers to a party or person in the singular, the plural is included. Section 1.030.2.

11

953-54 (citing *State v. Novak*, 428 S.W.2d 585, 592-93 (Mo. 1968) and *State v. Bryson*, 506 S.W.2d 358 (Mo. 1974)).[11]

Here the evidence showed that the informant not only heard the officers announce their presence but also clearly understood their purpose to arrest the suspect because she was the one who directed law enforcement to the residence for that exact purpose. Under these circumstances, the officers complied with section 544.200 because they knocked, announced their presence, demanded entry, and were refused.

Although there was sufficient evidence that Deputy Hunt knowingly damaged the residence, as a matter of law this charge was not submissible because he was acting lawfully under the privilege of section 544.200. The conviction for second-degree property damage is reversed.

## IV. Instructional Error

Deputy Hunt does not challenge the sufficiency of the evidence for third-degree assault under section 565.070. However, he alleges that the trial court committed plain error by submitting jury instructions 7 and 8. He asserts that the instructions failed to define essential legal terms, asked the jury to decide as a factual matter whether he was

---

[11] The *Boyer* court further pointed out that the entry would also have been justified under 18 U.S.C. § 3109, the federal knock and announce statute, which is substantially similar to section 544.200. *Boyer*, 574 F.2d at 954 (Referencing exception to § 1309 for situations "where the persons within already know of the officers' authority and purpose.").

acting as a law enforcement officer when he arrested the suspect, and did not require the jury to consider whether reasonable force was used.[12]

*A. Standard of Review*

As these claims of error were not preserved, Deputy Hunt seeks plain error review. Rule 30.20 provides that, whether the alleged errors are briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice. In applying plain error review, this Court frequently uses a two-step inquiry. First, the Court must determine whether the claimed error is, in fact, "plain error[] affecting substantial rights." Rule 30.20. Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected. *Id.* An error is plain if it is "evident, obvious, and clear." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). In the realm of instructional error, plain error exists when it is clear that the trial court has so misdirected or failed to instruct the jury that manifest injustice or miscarriage of justice has resulted. *State v. Ousley*, 419 S.W.3d 65, 75 (Mo. banc 2013). Instructional error is plain error when it is apparent the error affected the verdict. *State v. Miller*, 372 S.W.3d 455, 470 (Mo. banc 2012). Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice. *Baumruk*, 280 S.W.3d at 607-08.

---

[12] The instructions for burglary and property damage need not be addressed for instructional error in light of this Court's holdings on the insufficiency of the evidence to submit those charges.

13

Deputy Hunt's claim is entitled to plain error review. Applying step one, the liberty of a criminal defendant is a substantial right that, when violated, can lead to manifest injustice or miscarriage of justice. Further, it was evident, obvious, and clear to the trial court that there was significant risk of misdirecting the jury. During the instructional conference, the trial judge noted that there was "so much potential instruction error here the Court of Appeals will love this." As for step two, Hunt has made a showing that the error affected the verdict resulting in a manifest injustice or miscarriage of justice. Plain error review is granted.

### B. Assault Instructions

Two instructions were given to the jury on the assault: instruction 7 on assault and instruction 8 on reasonable force. These instructions were not patterned instructions from the Missouri Approved Instructions. Instruction 7 provided in relevant part:

> As to Count III, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about February 5, 2009, in the County of Montgomery, State of Missouri, the defendant attempted to cause physical injury to Phillip Alberternst by striking him,
>
> Second, that defendant did not act as a law enforcement officer lawfully using force to make an arrest as submitted in instruction No. 8,
>
> Then you will find the defendant guilty under Count III of assault in the third degree.

Instruction 8 provided, in relevant part:

> One of the issues as to count III is whether the use of force by [Defendant] against [Alberternst] was the lawful use of force by a law enforcement officer in making an arrest. In this state, the use of force by a law enforcement officer in making an arrest is lawful in certain situations.

14

…

On the issue of use of force by a law enforcement officer as to Count III, you are instructed as follows:

> If the defendant was a law enforcement officer making or attempting to make a lawful arrest or what he reasonably believed to be a lawful arrest of Phillip Alberternst for the crimes of Endangering the Welfare of a Child and Manufacturing Methamphetamine and used only such force as reasonably appeared to be necessary to effect the arrest or to prevent the escape of Philip Alberternst, then his use of force was lawful.
>
> The state has the burden of proving beyond a reasonable doubt that the defendant was not entitled to use force as a law enforcement officer. Unless you find beyond a reasonable doubt that the defendant was not entitled to use force as a law enforcement officer against Phillip Alberternst, you must find the defendant not guilty under Count III.

In essence, instruction 7, in paragraph two, required the jury to find two things: (1) whether Deputy Hunt was acting as a law enforcement officer and, if so, (2) whether he was "lawfully using force to make an arrest as submitted in instruction No. 8."

It was error for the jury to be permitted to determine whether Deputy Hunt was a law enforcement officer. Deputy Hunt's authority was derived from section 195.505, as he was a member of a multidistrict enforcement group, a police unit that has the power of arrest anywhere in the state. This authority was not a fact issue for the jury to decide as it was a legal question answered by statute.[13]

---

[13] The State now concedes Deputy Hunt's legal authority to arrest the suspect. In its brief on appeal, the State said, "[t]here is little question that Mr. Hunt, a deputy sheriff in St. Charles County, and a member of a multi-jurisdictional enforcement group, had (in the general sense) legal authority to arrest Mr. Alberternst."

15

Instruction 7 misdirected the jury that Deputy Hunt's authority was an issue for it to decide instead of presenting his authority as a legal conclusion from which it must determine the second inquiry of paragraph two of instruction 7 – whether Deputy Hunt used reasonable force, as defined in instruction 8, to subdue and arrest the suspect. In other words, the question for the jury was not whether Deputy Hunt *had* authority, but whether he *exceeded* it.

Instruction 8 purported to be a reasonable force instruction but actually repeated the flaws of instruction 7. It presented the same two-step inquiry, requiring the jury to find that Deputy Hunt's force was lawful if: (1) "[Deputy Hunt] was a law enforcement officer making or attempting to make a lawful arrest or what he reasonably believed to be a lawful arrest," and (2) that he "used only such force as reasonably appeared to be necessary to effect the arrest." As with instruction 7, instruction 8 misdirected the jury to determine whether Deputy Hunt was a law enforcement officer. Permitting the jury to make that determination could result in the jury avoiding the issue of whether Deputy Hunt used only such force as he believed reasonably necessary to effect the arrest.

A jury given the two-step inquiry outlined in instruction 8 would only reach the question of reasonable force if it first found that Deputy Hunt was a law enforcement officer attempting to make a lawful arrest. But if the jury believed the State's theory at trial that Deputy Hunt was acting outside his authority, then it would never have considered the question of reasonable force at all. Given that, as a matter of law, Deputy Hunt had authority as a law enforcement officer to make an arrest, instruction 8 misled

16

the jury because it allowed it to avoid an essential element of Deputy Hunt's assault conviction – whether he exceeded reasonable force.

Instruction 8 should have conformed to the law in section 563.046.1 that a law enforcement officer is "justified in the use of such physical force as he reasonably believes is immediately necessary to effect the arrest or to prevent the escape from custody." It did not do so and was a misstatement of the substantive law that governs the circumstances of the assault charge against Deputy Hunt.

In instruction 8, the jury was asked to consider whether Deputy Hunt was "making or attempting to make a lawful arrest or what he reasonably believed to be a lawful arrest." The lawfulness of the arrest was dependent on the lawfulness of the forced entry into the residence because if Deputy Hunt unlawfully entered, his very presence in the residence was illegal and so was the arrest. The problem is all the more evident given that the State has admitted that the burglary instructions were erroneous precisely because Instruction 5 did not define "enter unlawfully," a legal term on which the jury needed guidance. The very same conclusion applies to the use of the legal term "lawful arrest" in instruction 8. The jury was not instructed as to what specific conduct of Deputy Hunt's would make the entry or arrest lawful or unlawful and was left instead to answer an abstract legal question by roaming freely through the evidence.

There is a further problem with the assault instructions. Instruction 5 for first-degree burglary contained an erroneous definition of the predicate offense of assault. Instruction 5 defined assault as follows:

17

The crime of "assault" occurs when a person knowingly or recklessly causes or attempts to cause[] physical injury to another person, or purposely places another person in apprehension of immediate physical injury, or knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative.

This was a garden-variety definition of assault without any reference to Deputy Hunt's position as a law enforcement officer, reasonable force, or instruction 8. As a result, the jury was given two different definitions for the same assault.

In summary, instructions 7 and 8 misled the jury in requiring it to make a finding on a legal issue – that Deputy Hunt was a law enforcement officer. Instruction 8 failed to inform the jury that a law enforcement officer is justified in using such physical force as the officer reasonably believes is immediately necessary to effect the arrest. Instruction 8 further failed to instruct the jury that it could convict Deputy Hunt only if he exceeded that force permitted by law – an essential element when a police officer is charged with assault in the line of duty. The instructions were plainly erroneous because it is clear that the trial court misdirected and failed to adequately instruct the jury on assault. Because the jury convicted Deputy Hunt without being required to find all the essential elements of the offense, the errors affected the verdict and manifest injustice or miscarriage of justice resulted. The conviction is reversed and remanded for a new trial.

### V. Excluded Testimony

Deputy Hunt also claims that the trial court erred in sustaining the State's objection to a portion of Corporal Brian Clay's testimony about the issue of reasonable force for the assault count. Clay was the department instructor for the St. Charles County

18

sheriff's department. He was permitted to testify about the department's defensive tactics instruction, including the "force continuum," "control tactics," and "passive resistance." However, the court did not allow him to testify, based only on photographs of the suspect's injuries, as to whether Deputy Hunt struck the suspect "only in the places law enforcement officers are trained to strike resisting arrestees." Deputy Hunt alleges this was prejudicial error because the testimony goes directly to whether he used more force than was reasonably necessary to subdue and arrest the suspect.

Trial courts have broad discretion to admit or exclude evidence, and reversal is warranted only when there is a clear abuse of discretion. *State v. Shockley*, 410 S.W.3d 179, 195 (Mo. banc 2013). To preserve a claim of improperly excluded evidence, the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof. *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003). The purpose of an offer of proof is to preserve the evidence so the appellate court "understands the scope and effect of the questions and proposed answers." *State v. Tisius*, 92 S.W.3d 751, 767-68 (Mo. banc 2002). Offers of proof must show what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing admissibility. *Id.* Offers of proof must be specific and definite. *Karashin v. Haggard Hauling & Rigging Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983).

Deputy Hunt did not preserve his claim for appellate review. In response to the State's objection, defense counsel made a brief statement claiming that Corporal Clay would testify about the training officers received and that he thought Clay, who did not personally see the suspect after the arrest, would review the photographs and "see if those

19

photos and the injuries depicted in them are consistent with [Deputy Hunt's] training." When the trial court sustained the State's objection to exclude the testimony, defense counsel added nothing further. Offers of proof may be adequate even when informal and in narrative form, but they still must be sufficient to allow the court to make an informed ruling. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 766 (Mo. banc 2011). The offer of proof here fell short because it was indefinite and lacked sufficient specificity as to what Clay's testimony would be, leaving nothing in the record for an appellate court to review.

As the claim of error was not preserved, it may only be reviewed for plain error. The trial court limited Clay's testimony because it apparently believed it too tenuous for Clay, who never saw the suspect after the arrest, to merely state from photographs whether the injuries were caused by appropriate "control strikes." That decision was within the discretion of the trial court on the record then before it, and it is not necessary to determine whether the claimed error affected substantial rights or whether a manifest injustice occurred. The decision to exclude the testimony in the first trial, if error at all, was not "evident, obvious, and clear." *Baumruk*, 280 S.W.3d at 607. This Court declines to exercise plain error review or to address whether this would have constituted prejudicial error if preserved.

## VI. Conclusion

The trial court erred in submitting the charges of first-degree burglary and second-degree property damage to the jury, and in failing to sustain Deputy Hunt's motion for acquittal. Those convictions are reversed. The jury instructions for third-degree assault

20

were plainly erroneous.  The conviction is reversed and remanded for a new trial or other further proceedings.


All concur.