

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| DEPARTMENT OF MENTAL HEALTH, ) | |
| ) | WD86966 (Consolidated with |
| Respondent, ) | WD86969, WD86972, WD86973, |
| ) | WD86974, WD86975, WD86976, |
| v. ) | WD86978, WD86982, WD86983, |
| ) | WD86984, WD86985) |
| THE HONORABLE MICHAEL C. ) | |
| HEFFERNON, ) | Opinion filed:  March 18, 2025 |
| ) | |
| Appellant. ) | |

### APPEAL FROM THE CIRCUIT COURT OF
### JACKSON COUNTY, MISSOURI
### THE HONORABLE ADAM L. CAINE, JUDGE

Division Three:  W. Douglas Thomson, Presiding Judge,
Karen King Mitchell, Judge and Thomas N. Chapman, Judge

The Honorable Michael C. Heffernon appeals from the trial court's final

judgment in prohibition preventing him from ordering the Department of Mental

Health ("DMH") to perform competency examinations pursuant to section

552.020[1] on individuals being prosecuted for municipal ordinance violations.

Judge Heffernon brings three points on appeal.  In his first two points, he argues

section 552.020 grants him the authority to order the DMH to perform

---

[1] All statutory references are to RSMo 2016 as supplemented through January 3, 2024, the date the trial court made its writ of prohibition permanent, unless otherwise indicated.

competency examinations on individuals charged with municipal ordinance violations. In his third point, Judge Heffernon argues that municipal courts have the inherent powers to do anything reasonably necessary for the administration of justice, including ordering DMH to perform competency examinations. Finding no error, we affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

Over the course of five months, Judge Heffernon, a municipal judge for the Kansas City Municipal Court, ordered DMH to perform competency examinations on twelve municipal defendants who were being prosecuted for municipal ordinance violations. DMH filed a writ of prohibition at the circuit court regarding these twelve cases,[2] arguing that Judge Heffernon did not have the authority to order DMH to conduct competency examinations on municipal defendants. Judge Heffernon filed a motion for summary judgment, arguing the writ was improper. The trial court made the writ in prohibition permanent.

### A.   The "Municipal Defendants"[3]

In each case, the Municipal Defendants' attorney requested a competency examination, and Judge Heffernon granted that request and ordered DMH to complete such an examination. Each of Judge Heffernon's orders required the

---

[2] On this Court's own motion, all twelve cases were consolidated under this case number.

[3] The following facts are taken from the uncontroverted material facts of the summary judgment record.

Director of DMH "to have the defendant examined ... at the Center for Behavioral Medicine."

Defendant 1 was charged with indecent exposure, assault, stealing, disorderly conduct, and trespassing. Defendant 1 first appeared for an arraignment on June 16, 2022, but Judge Heffernon continued the proceeding because he did not think Defendant 1 understood the charges against him. On September 7, 2022, Defendant 1's counsel filed a motion requesting a competency hearing, which Judge Heffernon granted on September 20, 2022.

Defendant 2 was charged with disorderly conduct and property damage. Defendant 2 first appeared before Judge Heffernon on August 15, 2022. Judge Heffernon continued the proceedings on that date because Defendant 2's counsel requested that Defendant 2 "be seen by a doctor." On September 27, 2022, Defendant 2's counsel filed a written request for a competency hearing, which Judge Heffernon granted that same day.

Defendant 3 was charged with assault and resisting arrest on August 11, 2022. Judge Heffernon continued Defendant 3's trial several times, noting that Defendant 3 "was not communicating with her attorney, and at one point, [was] completely unresponsive." On September 27, 2022, Defendant 3's counsel requested a competency examination, which Judge Heffernon ordered that same day.

Defendant 4 was charged with assault on July 7, 2021. Defendant 4's counsel filed a motion to dismiss, arguing that Defendant 4 was not competent because he

3

had been appointed a guardian after the Greene County Circuit Court entered a Judgment of Incapacity and Disability in 2018. Judge Heffernon denied the motion. On September 13, 2022, Defendant 4's counsel requested a competency examination, and Judge Heffernon entered an order for a competency examination on September 27, 2022.

Defendant 5 was charged with multiple assaults and destruction of property over a two-year period. Defendant 5's counsel filed a motion to dismiss, claiming that Defendant 5 was mentally incapacitated. Judge Heffernon denied the motion to dismiss on May 5, 2022. On December 1, 2022, Defendant 5's counsel filed a motion for a competency hearing, which Judge Heffernon granted on that same day.

Defendant 6 was charged with multiple counts of trespass, disorderly conduct, and assault. Defendant 6's counsel filed a motion for a competency examination on January 17, 2023, which Judge Heffernon granted the next day.

Defendant 7 was charged with assault, indecent exposure, and trespass. On January 13, 2023, Defendant 7's counsel filed a motion for a competency examination, which Judge Heffernon granted that same day.

Defendant 8 was charged with several counts of trespassing. Due to her "inability to understand the court proceedings," several of Defendant 8's appearances were continued. On December 20, 2022 Judge Heffernon entered an order for a competency examination.

Defendant 9 was charged with trespassing and destruction of property. On December 1, 2022, Defendant 9's counsel filed a motion requesting a competency examination, which Judge Heffernon granted that same day.

Defendant 10 was charged with two counts of trespassing. During an appearance in municipal court, Defendant 10 "was unable to communication [sic] with her attorney and did not appear to understand the court proceedings." Defendant 10's counsel filed a motion for a competency examination on January 17, 2023, which Judge Heffernon granted that same day.

Defendant 11 was charged with assault, destruction of property, and trespassing. On January 13, 2023, Defendant 11's counsel requested a competency examination. Judge Heffernon granted that request and entered an order for a competency examination on January 17, 2023.

Defendant 12 was charged with assault and disorderly conduct. Defendant 12's counsel requested a competency examination on January 18, 2023, and Judge Heffernon entered an order for a competency examination that same day.

## B. Procedural History

DMH filed an "Application for De Novo Review of Municipal Court Order and in the Alternative, Petition for Writ of Prohibition or in the Alternative Writ of Mandamus" with the Jackson County Circuit Court to contest Judge Heffernon's orders for competency examination of the Municipal Defendants. DMH argued that Judge Heffernon exceeded his authority because DMH is not authorized to

perform competency examinations for persons charged with ordinance violations. The circuit court granted a preliminary writ.

Judge Heffernon filed a motion for summary judgment. DMH opposed the motion. On January 3, 2024, the trial court entered its Final Judgment in Prohibition. The trial court stated:

> The common legal issue in these matters is [Judge Heffernon's] order [requiring DMH] to conduct examinations pursuant to Section 552.020 RSMo. This Court has carefully considered the pleadings, available record in this case, the arguments of counsel at the hearing, and being fully advised in the premises, finds and concludes that [Judge Heffernon] lacks the authority to order the [DMH] to conduct such examinations pursuant to Section 552.020.2.

This appeal follows.

## II.      STANDARD OF REVIEW

"A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014) (citing *State ex rel. Mo. Pub. Defender Comm'n v. Pratte*, 298 S.W.3d 870, 880 (Mo. banc 2009)). "A writ of prohibition is the proper remedy to prevent a lower court from acting beyond its jurisdiction." *State ex rel. Griffin v. Belt*, 941 S.W.2d 570, 572 (Mo. App. W.D. 1997).

We have explained our review of a trial court's issuance of a writ in prohibition:

A writ of prohibition is discretionary. *State ex rel. Rosenberg v. Jarrett*, 233 S.W.3d 757, 760 (Mo. App. W.D. 2007). The circuit court's judgment granting such a writ is accordingly reviewed for an abuse of discretion. A circuit court abuses its discretion when its "ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Hancock v. Shook*, 100 S.W.3d 786, 795 (Mo. 2003). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." *Id.* (citation omitted).

"A trial court can abuse its discretion . . . through the application of incorrect legal principles . . . [W]hen the issue is primarily legal, no deference is warranted and appellate courts engage in *de novo* review." *State v. Carpenter*, 605 S.W.3d 355, 359 (Mo. 2020) (quoting *State v. Taylor*, 298 S.W.3d 482, 492 (Mo. 2009)); *see also Bohrn v. Klick*, 276 S.W.3d 863, 865 (Mo. App. W.D. 2009) ("the trial court necessarily abuses its discretion where its ruling is based on an erroneous interpretation of the law" (citation omitted)).

*Brady v. Ashcroft*, 643 S.W.3d 565, 570 (Mo. App. W.D. 2022).

### III.     ANALYSIS

Judge Heffernon brings three points on appeal. In his first point, Judge Heffernon argues that due process requires municipal judges to follow section 552.020, which requires DMH to conduct competency examinations and sets forth procedures for same. In his second point, Judge Heffernon argues that the plain language of section 552.020 requires municipal judges to order competency examinations. Finally, Judge Heffernon argues that the inherent authority of the municipal courts allows a municipal court judge to order competency examinations for municipal defendants.

Because Judge Heffernon's first two points require this Court to interpret section 552.020, we address them together.

7

**Section 552.020 does not apply to municipal ordinance violations.**

Our task is to address the power of a municipal court judge to compel DMH to conduct competency examinations upon municipal court defendants pursuant to section 552.020, nothing more.[4] This Court's primary obligation when interpreting a statute "is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009) (citation omitted). "Under traditional rules of statutory construction, undefined words are given their plain and ordinary meaning as found in the dictionary to ascertain the intent of lawmakers." *Howard v. City of Kansas City*, 332 S.W.3d 772, 780 (Mo. banc 2011) (citation omitted). "We do not interpret statutory language in a vacuum, but rather, in the context of the whole statute, considering the purpose of the entire act." *Fowler v. Fowler*, 504 S.W.3d 790, 797 (Mo. App. E.D. 2016). In determining the intent and meaning of statutory language, "'the words must be considered in context and sections of the statutes *in pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words.'" *State ex rel. Evans v. Brown Builders Elec. Co., Inc.*, 254 S.W.3d 31, 35 (Mo. 2008) (quoting *State ex rel. Wright v. Carter*, 319 S.W.2d 596, 600 (Mo. banc 1959)). "[A] court must

---

[4] Thus, while we must determine same, nothing herein should be read to denigrate the principle that a criminal defendant much be competent to stand trial.

8

presume that the legislature acted with a full awareness and complete knowledge of the present state of the law." *State v. Rumble*, 680 S.W.2d 939, 942 (Mo. banc 1984) (citation omitted).

The authority of the municipal court division of the circuit court and of the judges of those divisions is limited to hearing and determining violations of municipal ordinances. *See* Mo. Const. art. V, §§ 23, 27(2)(d). "A municipal judge may hear and determine municipal ordinance violation cases of the municipality or municipalities making provision for the particular municipal judge." Section 478.230.

Kansas City Municipal Court Judge Heffernon alleges that section 552.020.2 gives him the authority to order DMH to conduct competency hearings. In relevant part, section 552.020.2 states:

> Whenever any judge has reasonable cause to believe that the accused lacks mental fitness to proceed, the judge shall, upon his or her own motion or upon motion filed by the state or by or on behalf of the accused, by order of record . . . shall direct the director [of DMH] to have the accused so examined[.]

To give context to section 552.020, we must consider section 552.020.1 which states, "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or her or to assist in his or her own defense shall be tried, convicted or sentenced for the commission of *an offense* so long as the incapacity endures." (emphasis added). Upon review of section 552.020.1, it is evident that section 552.020.2's applicability, and DMH's statutorily-required duty to examine an accused, is solely to those persons who are

9

to be "tried, convicted or sentenced for the commission of an offense." Said a different way, section 552.020.2's requirement that DMH examine the mental fitness of an accused is predicated on the accused being before the court for an "offense." Thus, we must determine whether a municipal ordinance violation constitutes an "offense". For several reasons, we find municipal ordinance violations do not constitute offenses.

First, we look to the definition of "offense." Though we typically refer to the dictionary for common definitions, we "may consider 'statutes involving related subject matter if such statutes provide necessary definitions or shed light on the meaning of the statute being construed,'" "'even though the statutes are found in different chapters and were enacted at different times.'" *SEBA, LLC v. Dir. of Revenue*, 611 S.W.3d 303, 316 (Mo. banc 2020) (quoting *Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815, 825 (Mo. banc 2014); *Cook Tractor Co. v. Dir. of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006)). Here, section 556.061(35) appears in the definition section of the Missouri criminal code and defines "offense" as "any felony or misdemeanor." This definition of "offense" does not specifically include ordinance violations. We find this definition of "offense" compelling as it is utilized throughout the criminal code, and section 552.020 is directly applicable to criminal proceedings. *See Brown Builders Elec. Co., Inc.*, 254 S.W.3d at 35 (quoting *Carter*, 319 S.W.2d at 600) ("In determining the intent and meaning of statutory language, . . . 'cognate sections, must be considered in order to arrive at the true meaning and scope of the words.'").

10

Further, section 552.020 applies to those who are to be "tried, convicted or sentenced for the commission of an offense," which, when read plainly, refers to those facing *criminal* charges, not municipal ordinance violations. Indeed, "Chapter 552 is captioned 'Criminal Proceedings Involving Mental Illness' and is applicable to *criminal* proceedings." *State ex rel. Nixon v. Kinder*, 129 S.W.3d 5, 8 (Mo. App. W.D. 2003) (emphasis added). In contrast, the Missouri Supreme Court has consistently described municipal ordinance violations as civil, not criminal, proceedings, stating: "Prosecutions for municipal ordinance violations are civil proceedings with quasi[-]criminal aspects." *Tupper v. City of St. Louis*, 468 S.W.3d 360, 371 (Mo. banc 2015) (citing *State ex rel. Kansas City v. Meyers*, 513 S.W.2d 414, 416 (Mo. banc 1974)). In short, when considering section 552.020 in context, it is clear section 552.020 applies to criminal defendants facing prosecution for misdemeanors and felonies.

We are also not persuaded that section 552.020 extends to a municipal ordinance violation because of the violation's "quasi-criminal" nature.[5] Municipal

---

[5] As stated in *Tupper*:

The quasi-criminal aspect is apparent in the way Rule 37, which governs ordinance violations, mirrors the rules governing criminal proceedings. For example, the rules use the terms commonly associated with criminal cases, such as "prosecutor," "arraignment," and "plea." Rules 37.34, 37.48 and 37.58. The notice of violation must state facts supporting a finding of probable cause to believe the accused violated the ordinance. Rule 37.33. The accused has a right to counsel and, in some circumstances, the right to be appointed counsel. Rule 37.50. Moreover, because of the quasi-criminal nature of ordinance violations, the burden is on the city "to produce evidence of such a convincing nature as to convince the trier of facts that defendant was guilty of the offense charged beyond a reasonable doubt." *City of Kansas City v. Oxley*, 579 S.W.2d 113, 114 (Mo. banc 1979) (internal quotations omitted); *City of Kansas City v. Tyson*, 169 S.W.3d 927, 928 (Mo. App. 2005).

11

ordinance violations are governed by Chapter 479 (entitled "Municipal Courts and Traffic Courts") and Rule 37. All of the "quasi-criminal" aspects of municipal ordinance violations are pursuant to those provisions. Neither Chapter 479 or Rule 37 contain any provisions requiring DMH to perform competency evaluations for those facing municipal ordinance violations.[6]

Judge Heffernon argues that section 552.020.2 applies to municipal ordinance violations because it states "any judge" may order competency hearings. This argument, however, ignores that section 552.020.2 is predicated upon 552.020.1's initial requirement that the accused must be facing trial, conviction, and sentencing for the commission of *an offense.* As we have discussed at length, ordinance violations are civil in nature and do not constitute *an offense*, thus rendering section 552.020.2 inapplicable to such violations.

Because section 552.020 does not apply to those charged with municipal ordinance violations, the trial court did not abuse its discretion in making the writ in prohibition permanent. Points I and II are denied.

**POINT III**

In Point III, Judge Heffernon argues that the trial court plainly erred in

---

*Tupper*, 468 S.W.3d at 371-72.

[6] It is not lost upon this Court that while Rule 67 and Chapter 479 address some basic constitutional principles of criminal proceedings, competency and the determination thereof is not addressed. Although we find that section 552.020 does not apply to those charged with municipal ordinance violations and thus a municipal court judge cannot require DMH to examine a municipal court defendant, we make no determination as to whether authority exists elsewhere in Missouri statutes for requiring same.

prohibiting him from ordering DMH to conduct competency examinations because "Missouri courts have inherent powers to do all things that are reasonably necessary for the administration of justice independent of statutory authorization." Judge Heffernon acknowledges that he did not preserve this point for review, so we review this point for plain error.

"Plain error review is 'rarely . . . granted in civil cases.'" *State ex rel. Putnam v. State Bd. of Registration for Healing Arts*, 641 S.W.3d 250, 255 (Mo. App. W.D. 2021) (quoting *Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 269 (Mo. banc 2014)). "Plain error is evident, obvious and clear error." *State v. Bailey*, 839 S.W.2d 657, 661 (Mo. App. W.D. 1992) (citation omitted). As the Missouri Supreme Court has explained:

> "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice." *State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014). "First, the Court must determine whether the claimed error is, in fact, 'plain error[] affecting substantial rights.'" *Id.* "An error is plain if it is 'evident, obvious, and clear.'" *Id.* "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." *Id.* "Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice." *Id.* "Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice." *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006). "To be entitled to relief under the plain error rule, an appellant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." [*State v.*] *Winfield*, 5 S.W.3d [505,] 516 [(Mo. banc 1999)]. "In other words, the appellant must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id.*

*State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017) (first and second alteration in original).

We decline to exercise plain error review here. In Point III, Judge Heffernon argues that his inherent authority as a municipal judge permits him to order DMH to conduct competency examinations *without* statutory authority, simply by his inherent authority as a judge. We are unpersuaded that any such inherent authority permits him to order a particular state agency to conduct a competency examination at his discretion in the absence of statutory authority. Judge Heffernon cites no authority granting him the authority to order DMH to conduct competency examinations absent statutory authority.[7]

Point III is denied.

## IV. CONCLUSION

The trial court did not abuse its discretion in making the writ in prohibition permanent. The trial court's judgment is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

[7] Judge Heffernon cites a case in support of his argument that finds a magistrate judge has the authority to order DMH to conduct competency hearings on those accused of felonies based on section 552.020. *See State ex rel. Vaughn v. Morgett*, 526 S.W.2d 434, 437 (Mo. App. 1975). We can agree that a now-associate circuit judge has the authority to do as a magistrate did in 1975. However, as discussed above, section 552.020 does not apply to those accused of municipal ordinance violations as they are civil proceedings and not "offenses," and neither is that authority vested in a municipal court judge.