

# In the Missouri Court of Appeals
## Eastern District

### <u>DIVISION ONE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112494 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CR08231-01 |
| | ) | |
| DANIEL J. GARBER, | ) | Honorable Dean P. Waldemer |
| | ) | |
| Appellant. | ) | Filed: April 22, 2025 |

### Introduction

Appellant Daniel Garber appeals the trial court's judgment on a jury verdict convicting him of unlawful possession of a firearm. Appellant argues the trial court erred in not *sua sponte* intervening when the State improperly asked Appellant whether another witness was lying. We affirm the judgment of the trial court.

### Factual and Procedural Background

#### Facts

The facts, in the light most favorable to the jury verdict, are as follows. *See State v. Bowman*, 663 S.W.3d 916, 918 n. 1 (Mo. App. W.D. 2023).

On January 2, 2020, Appellant got into an argument with his girlfriend.[1] After the girlfriend left, a neighbor called the police, and a police officer ("Officer") was dispatched to the residence. When Officer arrived, the neighbor identified the apartment Appellant was in. As Officer approached the apartment, he saw Appellant sitting on the couch through the storm door. After Officer knocked on the storm door three or four times, Appellant approached the door. Officer announced the reason he was there and asked Appellant to step outside. When Appellant came outside, he told Officer that he had gotten into a verbal argument with his girlfriend. Officer saw smashed furniture around the apartment and pressed Appellant on whether the argument was more than verbal. Appellant responded that he did not hit his girlfriend, but she had slapped him.

Officer asked if he could look around the apartment and make sure nobody was injured. Appellant told him to "go ahead." Once inside, Officer observed a black and silver handgun and an eyeglass case on the couch where Officer had seen Appellant sitting. Officer asked Appellant about the handgun, and he replied that "he has to protect himself." Officer also observed a glass gun case with six long guns inside.

Officer saw that the eyeglass case next to the handgun on the couch was partially open and there was a glass pipe inside. Officer opened the eyeglass case and found a clear plastic bag containing a white rocky substance, which later tested positive for methamphetamine. The eyeglass case also contained a "blunt" with a green leafy substance inside, later identified as marijuana.

Officer placed Appellant under arrest. Officer conducted a record check and determined that Appellant was a convicted felon prohibited from possessing a firearm.

---

[1] The personal identifying information of victims and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

Procedural Background

Appellant was charged with felony unlawful possession of the handgun and felony possession of methamphetamine. At Appellant's jury trial, the State presented the testimony of Officer and the forensic scientist from the St. Louis County Police Department Crime Laboratory who tested the methamphetamine. Appellant was the sole witness for the defense.

While cross-examining Appellant, the State asked about the long guns in the gun case, and why Appellant did not consider them an "issue" since he was a felon. Appellant responded that they were his girlfriend's guns, not his, and it was his girlfriend's apartment. The State responded by asking Appellant why he had told the police that one of the guns was his son's. Appellant denied saying that, which led the State to ask, "So everything that the cop said is a lie, and . . . everything you're offering today is the truth?" Appellant again denied that he was lying, but also declined to call Officer a liar. Instead, he testified that the police "misperceived the situation" or merely "misremember[ed] it." The State did not otherwise elicit evidence of Appellant's alleged statement that one of the guns belonged to his son.

The jury convicted Appellant of unlawful possession of a firearm but acquitted him of possession of a controlled substance. Appellant was sentenced to seven years in prison, execution of sentence suspended, and placed on five years' probation.

**Discussion**

In Appellant's first and only point, he argues that the trial court plainly erred by failing to *sua sponte* intervene and either submit a curative instruction or order a mistrial when the State asked Appellant whether Officer was lying.

Standard of Review

Appellant's counsel did not object during Appellant's cross-examination and did not include this issue in his motion for new trial. Thus, Appellant did not preserve this claim on appeal. *See State v. Caves*, 700 S.W.3d 596, 598 (Mo. App. E.D. 2024). "'Generally, this Court does not review unpreserved claims of error.'" *Id.* (quoting *State v. Jackson-Bey*, 690 S.W.3d 181, 186 (Mo. banc 2024)).

This Court engages in a discretionary, two-step process to determine whether it will review for plain error. *State v. Hunt*, 451 S.W.3d 251, 260 (Mo. banc 2014). In the first step, the Court determines whether the claimed error is, in fact, "'plain error[] affecting substantial rights.'" *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting Rule 30.20).[2] This requires that the defendant "'facially establish[] substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Vitale*, 688 S.W.3d 740, 746 (Mo. App. E.D. 2024) (quoting *State v. Shepard*, 622 S.W.3d 761, 772 (Mo. App. E.D. 2023)). "'[P]lain errors are those which are evident, obvious, and clear.'" *Id.* (quoting *Shepard*, 662 S.W.3d at 772). Unless the defendant meets his burden of demonstrating manifest injustice entitling him to plain error review, this Court will decline to review for plain error under Rule 30.20. *See Brandolese*, 601 S.W.3d at 526. In the second step, the Court determines whether manifest injustice or a miscarriage of justice has actually resulted. *Id.* To demonstrate manifest injustice or a miscarriage of justice, the defendant must show the error was outcome-determinative. *Vitale*, 688 S.W.3d at 746.

## Analysis

Appellant argues the trial court erred in not taking *sua sponte* action when the State asked Appellant whether Officer was lying. Appellant maintains the State impermissibly asked Appellant's opinion on another witness's mental state and invaded the province of the jury.

---

[2] All Rules references are to the Missouri Supreme Court Rules (2023), unless otherwise indicated.

4

For context, the State engaged in the following line of cross-examination of Appellant at trial:

Q. There were six guns at least in a glass gun case, right?
A. That's what they said, yes.
. . .
Q. [D]id you ever notice [the guns in the case]?
A. Yeah, I noticed the guns in the gun case when I stayed there, but –
Q. And they were yours?
A. They're not mine. I mean, I didn't think they were going to be an issue ever. They never—
. . .
Q. Why didn't you think they were an issue?
A. Oh. I mean, because I wasn't messing with them, you know, so -- they're hers. This is her house.
Q. If they're hers, then why did you tell the police that one of them was your son's?
A. I didn't say that.
Q. So everything that the cop said is a lie, and --
A. No.
Q. -- everything you're offering today is the truth?
A. No, I didn't say that the cop -- I didn't say one thing that the cop said was not a lie. You know. I'm not saying that they're lying on everything, but I'm saying that they misperceived the situation and misremember it.

Appellant argues that this series of questions was improper and the trial court should have intervened *sua sponte*.

Missouri appeals courts have been reluctant to require trial courts to take *sua sponte* actions on behalf of a party in examining a witness. *See State v. Roper*, 136 S.W.3d 891, 902 (Mo. App. W.D. 2004). Invitations to review a trial court's failure to intervene *sua sponte* "have been rejected in all but the most unusual circumstances." *Id.* (citing *State v. Francis*, 60 S.W.3d 662, 671 (Mo. App. W.D. 2001)).

Nevertheless, "'[t]he law in Missouri is clear that witnesses may not be asked to give their opinion on the truth or veracity of another witness'[s] testimony.'" *State v. Brown*, 619 S.W.3d 586, 590 (Mo. App. E.D. 2021) (quoting *State v. Bescher*, 247 S.W.3d 135, 140 (Mo. App. S.D. 2008)); *see also Harrison v. State*, 301 S.W.3d 534, 539 (Mo. App. S.D. 2009); *State v. Walters*,

5

241 S.W.3d 435, 439 (Mo. App. W.D. 2007); *State v. Savory*, 893 S.W.3d 408, 411 (Mo. App. W.D. 1995). This rule goes as far back as 1869. *Roper*, 136 S.W.3d 891, 900 (citing *Holliman v. Cabanne*, 43 Mo. 568, 570 (Mo. banc 1869)). Asking a witness to opine on the veracity of another witness's testimony is improper because the witness is not qualified to opine on another's state of mind. *Brown*, 619 S.W.3d at 591 (quoting *Walters*, 241 S.W.3d at 439). In a criminal case, this line of questioning may put a defendant in an "untenable position": "By objecting to such questions, a defendant could look evasive, but answering could put him in an even worse light." *Roper*, 136 S.W.3d at 901.

Ultimately, however, the question before us is not whether the line of questioning was improper. *See Brown*, 619 S.W.3d at 591. Instead, this Court is tasked with reviewing whether the trial court plainly erred in not *sua sponte* interjecting in the State's cross-examination of Appellant. *See id.*; *see also Roper*, 136 S.W.3d at 902.

In *Brown*, 619 S.W.3d at 589–90, the State engaged in similar cross-examination of the defendant's girlfriend, his only trial witness:

> Q: But Fred Brown had a shotgun that night, didn't he?
> A: No, sir.
> Q: You're sure about that?
> A: Yes.
> **Q: So if [Victim] is telling us that, he's just making that up?**
> A: I don't know what he is telling you, but I can tell you that he didn't walk in my house with a shotgun that night.
> . . .
> Q: And [Defendant] had a pistol?
> A: No.
> . . .
> Q: You never saw [Defendant] with a pistol?
> A: No.
> **Q: So if [Victim] tells us that, he's making that up, too?**
> A: I'm not going to say he's making it up. I don't know what he's saying to say that. I'm saying for myself I never seen him with a pistol.

*Id.* (emphasis in original). This Court held the trial court did not plainly err by failing to intervene *sua sponte*, despite that the State's questioning was improper. *Id.* at 592–93. The alleged error was not outcome determinative because the defendant failed to demonstrate "a reasonable probability that the verdict would have been different had the trial court taken action." *Id.* at 592.

Appellant admits this case is like *Brown* in that the verdict turned on the jury's credibility determinations regarding the differing testimony of the defense witness and the State's witness. 619 S.W.3d at 591. The *Brown* court nonetheless found no prejudice to the defendant. *Id.* at 592–93. Also as in *Brown*, the "untenable position" and resulting prejudice identified in *Roper* did not develop because Appellant avoided calling Officer a liar and did not otherwise "opine on his state of mind." *See Brown*, 619 S.W.3d at 592; *see also Walters*, 241 S.W.3d at 439 (finding no prejudice when the State asked whether a police officer was lying in his testimony partially because the defendant did not comment on the officer's truthfulness and instead responded that the officer said "'some things' that 'were not true'"). Instead, when pressed with the question, "So everything that the cop said is a lie," Appellant responded, "No." He elaborated, "I'm not saying that they're lying on everything, but I'm saying that they misperceived the situation and misremember it."

Additionally, there is no manifest injustice because sufficient evidence proved Appellant's guilt beyond a reasonable doubt. *See Brown*, 619 S.W.3d at 592. For Appellant to be convicted of unlawful possession of a firearm as charged, the State had to prove that he knowingly possessed a 9mm semi-automatic handgun and was convicted of a felony in 2008. Appellant stipulated to his prior felony conviction. As to Appellant's knowing possession of the firearm, the jury was instructed that possession may be either actual or constructive "if the person has the object on his or her person or within easy reach and convenient control." Officer testified that he observed Appellant sitting on the couch in the apartment. After Appellant allowed Officer into the

7

apartment, Officer saw a handgun on the couch where Appellant had been sitting. Officer also testified that, when he asked Appellant about the handgun, Appellant said "he has to protect himself." The State adduced the handgun as Exhibit 1. The evidence supporting Appellant's conviction "weighs against finding that the error identified here was outcome-determinative such that it resulted in manifest injustice." *Brown*, 619 S.W.3d at 592.

Finally, Appellant points out that the State's cross-examination elicited Appellant's alleged statement that one of the guns in the cabinet belonged to his son, and the State offered no other evidence of that statement at trial. But that would not be cause for us to find manifest injustice or a miscarriage of justice. For an error to result in manifest injustice or a miscarriage of justice, it must be outcome-determinative. *Id.* at 591 (quoting *Roper*, 136 S.W.3d at 902).

The subject of the State's cross-examination was a firearm that was not charged. Even if Appellant had been charged with possessing the long guns, Appellant's alleged statement that one of the guns belonged to his son tends more to exculpate Appellant than to inculpate him. In any event, Appellant's alleged statement was raised in the State's question, and Appellant's answer was a denial that he made that statement. *See Balbirnie v. State*, 649 S.W.3d 345, 356 (Mo. App. W.D. 2022) (quoting *Storey v. State*, 175 S.W.3d 116, 153 (Mo. banc 2005), for proposition that "it is a fundamental rule of evidence that '[a] question is not evidence.'"). As a result, Appellant has not demonstrated "a reasonable probability that the jury's verdict would have been different, had the error not taken place." *Brown*, 619 S.W.3d at 591 (quoting *Roper*, 136 S.W.3d at 903).

Appellant has not met his burden under Rule 30.20 to show that manifest injustice, a miscarriage of justice, or outcome-determinative error resulted from the trial court's failure to intervene *sua sponte* in the State's cross-examination of Appellant. *See Brown*, 619 S.W.3d at 592–93.

8

Point I is denied.

## Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.,

James M. Dowd, P.J., and
Angela T. Quigless, J. concur.

9