

# Missouri Court of Appeals
## Western District

STATE OF MISSOURI,             )
                               )   **WD86624**
             **Respondent,**   )
**v.**                            )   **OPINION FILED:**
                               )
**SCOTTY GENE REYNOLDS,**   )   **May 6, 2025**
                               )
               **Appellant.**    )
                               )

### Appeal from the Circuit Court of Linn County, Missouri
### The Honorable Terry Alan Tschannen, Judge

### Before Division Three: W. Douglas Thomson, Presiding Judge,
### Karen King Mitchell, Judge, and Thomas N. Chapman, Judge

Following a jury trial in the Circuit Court of Linn County,[1] Scotty Reynolds

("Reynolds") was convicted of two counts of first-degree statutory rape, six counts of

first-degree statutory sodomy, four counts of second-degree child molestation, one count

of first-degree child molestation, and one count of second-degree statutory sodomy. He

raises four points on appeal. In his first three points, he argues that the trial court erred in

excluding evidence. In his fourth point, he argues the trial court plainly erred in

impermissibly commenting on the testimony of a witness. The judgment is affirmed.

---

[1] In November of 2020, the venue of the case was transferred to Linn County.

## Background[2]

At one time, Mother and Reynolds were married.[3] In 2016, Victim 1, Victim 2, Victim 3, Victim 4, and Victim 5 came to live with Reynolds and Mother in Florida. At some point, Reynolds and Mother obtained guardianship of the children. In December of 2018, Mother and Reynolds and the five children moved to Missouri. They initially stayed with Mother's parents and then moved into a house in Randolph County in May of 2019.

In July of 2019, Mother and Reynolds separated following an argument. Reynolds left the home with his belongings. On one afternoon in the following days, Victim 1 reported to Mother that Reynolds had been "having sex with [her]" and that when she "started saying no to him," "he went to [her] sisters." Mother reported this information to a hotline.

An investigation ensued. The children gave forensic interviews recounting repeated sexual abuse perpetrated by Reynolds. Victim 6, a child relative of Mother's, also disclosed that Reynolds had sexually abused her on two separate occasions. At some point, a consent search of Mother's home was conducted and a bottle of "lube" was found

---

[2] Reynolds does not challenge the sufficiency of the evidence in support of his convictions. We view the evidence in the light most favorable to the verdict. *State v. Campbell*, 600 S.W.3d 780, 784 n.1 (Mo. App. W.D. 2020) (citing *State v. Brand*, 309 S.W.3d 887, 890 n.2 (Mo. App. W.D. 2010)).

[3] We avoid using identifying information of victims and witnesses pursuant to provisions regarding confidentiality. *See* §§ 595.226 and 509.520.

above a ceiling tile above the bed of one of the children as described in the forensic interview.

Reynolds was charged with having committed multiple acts of sexual abuse against six different victims. At trial, Victim 1, Victim 2, Victim 3, Victim 5, and Victim 6 testified to being sexually abused by Reynolds. Victim 1, Victim 2, Victim 3, and Victim 5 also testified to abuse that they witnessed Reynolds inflict upon their sisters. Portions of forensic interviews were also played for the jury.

Following a two-day jury trial in June of 2023, the jury convicted Reynolds on all fourteen counts in the amended information. The jury recommended sentences of a term of life imprisonment on each of Counts I, II, III, IV, V, VIII, X, XII; a term of fifteen years of imprisonment on each of Counts VI, VII, IX, XI, and XIII; and a term of seven years on Count XIV. The trial court sentenced Reynolds in accordance with the jury's recommendations.

Reynolds now appeals to this court.

**Analysis**

Reynolds raises four points on appeal. In his first three points, he argues that the trial court erred in excluding evidence of prior sexual abuse perpetrated against Victim 1, Victim 2, and Victim 3. In his fourth point, Reynolds argues that the trial court plainly erred by abandoning its duty of neutrality when asking a question and repeating the answer in the presence of the jury.

## Points One, Two, & Three

In his first three points on appeal, Reynolds argues that the trial court abused its discretion in excluding evidence that Victim 1, Victim 2, Victim 3, and their sisters were removed from their biological mother's house because of sexual abuse. Reynolds argues that, despite section 491.015, it was necessary for him to present evidence of prior sexual abuse suffered by Victims 1, 2, 3, 4, and 5 in order to rebut the inference that these children had sexual knowledge because the allegations against Reynolds were true.

Applicable in certain prosecutions, "[s]ection 491.015, commonly referred to as the 'rape shield' statute, creates a presumption that evidence of a victim's prior sexual conduct is irrelevant." *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013). Section 490.015.1 enumerates four exceptions to this presumption in recognition of the limited circumstances in which prior sexual conduct may be relevant. *See id.*

Reynolds concedes that the exceptions enumerated in section 491.015.1 do not apply to the evidence he sought to introduce. Reynolds instead argues that the evidence he sought to introduce falls within a "judicially created exception based on a criminal defendant's right to a fair trial required by the concept of due process." *See State v. Cooper*, 581 S.W.3d 677, 681 (Mo. App. S.D. 2019). Under this narrow exception, if "the State seeks to introduce evidence to prove a defendant's guilt or draw for the jury an inference from which to show a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from introducing contrary evidence without violating a defendant's constitutional right to a fair trial." *See Cooper*, 581 S.W.3d at 681-82

(quoting *State v. Gorman*, 468 S.W.3d 428, 433-34 (Mo. App. W.D. 2015)). Missouri courts have indicated that, where the State attempts to use evidence of a child witness's precocious sexual knowledge to draw an inference that the child's knowledge was proof that the alleged abuse by the defendant had occurred, the defendant may be constitutionally entitled to put on a defense showing an alternative source for such knowledge. *See State v. Samuels*, 88 S.W.3d 71, 81 (Mo. App. W.D. 2002); *State v. Sales*, 58 S.W.3d 554, 559 (Mo. App. W.D. 2001). But, "[i]f the state does not attempt to use evidence of a victim's unusual sexual knowledge to establish Defendant's guilt, the Defendant is not constitutionally entitled to present evidence about any past abuse or present other evidence of that abuse." *State v. Sittner*, 294 S.W.3d 90, 91 (Mo. App. E.D. 2009) (citing *Sales*, 58 S.W.3d at 559).

Prior to trial, the State filed a motion *in limine* that sought to exclude evidence of prior sexual abuse of the victims, arguing that none of the exceptions under section 491.015 were applicable. Reynolds filed a notice of intent to present evidence of prior sexual abuse experienced by Victim 1, Victim 2, Victim 3, Victim 4, and Victim 5. Reynolds indicated that the children had been removed from their biological mother's home prior to being placed with Reynolds and Mother. Reynolds argued that he anticipated that the alleged victims would provide graphic descriptions of sexual acts at trial and that the jury might infer that the only way that they would have such knowledge would be if they had been abused by Reynolds. Reynolds indicated that he sought to

5

present evidence of prior sexual abuse to rebut the inference that the sexual knowledge of the alleged victims meant that the allegations against Reynolds were true.

By pre-trial order, the trial court granted the State's motion *in limine*. The trial court's order indicated that Reynolds would be barred from making statements or inquiries regarding past sexual abuse inflicted upon the alleged victims unless a further ruling was made. The trial court indicated that it would hear argument on the issue pending the State's presentation of evidence and would consider proposed evidence by Reynolds in light of the limited holding of *State v. Douglas*, 797 S.W.2d 532 (Mo. App. W.D. 1990), and *State v. Sales*, 58 S.W.3d 554 (Mo. App. W.D. 2001).

At trial, following Victim 1's testimony, Reynolds made an offer of proof. During the offer of proof, Victim 1 testified that she had lived with her biological mother in Texas prior to living with Reynolds and Mother. Regarding abuse that may have occurred in the home of Victim 1's biological mother, the following exchange occurred:

> Q. Okay. Part of the reason you were removed from [your biological mother's] home was because there was a physical abuse; is that right?
>
> A. Yes.
>
> Q. There was also some sexual abuse; is that right?
>
> A. Yes.

Following the offer of proof, Reynolds requested that the trial court reconsider its earlier ruling based on the offer of proof. Reynolds did not then make an argument as to the

6

relevance of the testimony or why it would be admissible. The trial court denied admission of the testimony elicited from Victim 1 in the offer of proof.

Following Victim 2's testimony, Reynolds made a similar offer of proof. Victim 2 testified that she used to live with her biological mother in Texas and that she and her sisters were removed from her biological mother's home. The following exchange then occurred:

Q. You were removed, in part, because of some physical abuse; is that right?

A. Yes.

Q. There was also some sexual abuse; is that right?

A. Yes.

Following this offer of proof, the trial court asked defense counsel: "[I]s there anything else you want to tell me?" Defense counsel stated: "Yes, Judge. We'd renew our request to have this evidence submitted to the jury." Reynolds did not at that time make any argument regarding the relevance of the testimony. The trial court denied admission of the testimony Victim 2 provided in the offer of proof.

Following Victim 3's testimony, Reynolds made another offer of proof. Victim 3 testified that she lived in Texas with her biological mother and that she and her sisters were removed from that home. The following exchange then took place:

Q. You were moved, in part, because there some – some physical abuse; is that right?

A. Yes.

Q. There was also some sexual abuse going on there; is that right?

A. Yes.

Following the offer of proof, Reynolds renewed his request "to have that evidence presented to the jury." No argument was made at that time regarding the relevance of the evidence or why it was admissible. The trial court denied admission of Victim 3's testimony that was provided in the offer of proof.

We review the evidentiary rulings of the trial court for abuse of discretion. *State v. Williams*, 548 S.W.3d 275, 287 (Mo. banc 2018). "An abuse of discretion occurs only if the circuit court's ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful deliberate consideration." *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020) (internal quotations omitted).

"To preserve a claim of improperly excluded evidence, the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof." *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014). "The purpose of an offer of proof is to preserve the evidence so the appellate court understands the scope and effect of the questions and proposed answers." *Id.* (internal quotations and citation omitted). "Offers of proof must show what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing admissibility." *Id.* "The offer of proof must demonstrate the relevancy of the offered testimony, must be specific, and

must be definite." *State v. Shutters*, 697 S.W.3d 13, 21 (Mo. App. S.D. 2024) (quoting *State v. Murphy*, 534 S.W.3d 408, 415 (Mo. App. E.D. 2017)).

In this matter, the trial court did not abuse its discretion in denying admission of the testimony in the offers of proof. The offers of proof were lacking in the specificity required of offers of proof and failed to provide a basis for concluding that the testimony in the offers of proof was both logically and legally relevant. The offers of proof were not accompanied with any specific argument as to why the specific testimony in the offers of proof was logically and legally relevant. Reynolds made no argument regarding how the trial court's ruling might limit the inferences permissible for the State to argue during closing argument. Rather, Reynolds relied on his general arguments in his pre-trial motion without even presenting evidence that would provide factual support for the assertions in the motion. In particular, the offers of proof were so nonspecific that they failed even to indicate the victim or victims of the prior sexual abuse that had apparently occurred in the home of the biological mother of the victims. The offer of proof made at the end of the testimony of both Victim 1 and Victim 2 indicated that "[t]here was . . . some sexual abuse" that had occurred, but did not indicate the victim or victims of such abuse. The offer of proof made at the end of Victim 3's testimony indicated that there was "some sexual abuse going on" in the biological mother's home, but likewise did not indicate the victim or victims of the abuse. None of the offers of proof provided any detail concerning the nature of the abuse that had previously occurred in the biological mother's home so as to provide a basis for assessing the relevance of the testimony in the

9

offers of proof.  Given the lack of specificity underlying these offers of proof, the trial

court did not abuse its discretion in denying admission of the testimony in the offers of

proof.

**Point Four**

In his fourth point on appeal, Reynolds argues that the trial court plainly erred by

abandoning its duty of neutrality by asking a question of a witness and repeating the

answer given by the witness.  Reynolds argues that the trial court impermissibly

commented on the evidence.  Reynolds made no objection to the trial court's comments.

Therefore, our review, if at all, can only be for plain error.

Generally, appellate courts do not review unpreserved claims of error.  *State v.*

*Jackson-Bey*, 690 S.W.3d 181, 186 (Mo. banc 2024) (citing *State v. Brandolese*, 601

S.W.3d 519, 525 (Mo. banc 2020)).  However, Rule 30.20 provides that "plain errors

affecting substantial rights may be considered in the discretion of the court when the

court finds that manifest injustice or miscarriage of justice has resulted therefrom."  Plain

error review is discretionary.  Rule 30.20; *Brandolese*, 601 S.W.3d at 526.  Appellate

courts will not review for plain error "unless the claimed error facially establishes

substantial grounds for believing that manifest injustice or miscarriage of justice has

resulted."  *See Brandolese*, 601 S.W.3d at 526 (internal quotations and citation omitted).

During the State's examination of Victim 1 at trial, Victim 1 was asked whether

she witnessed things happen to anyone else, and the following exchange occurred:

The State:  Okay.  And what did you see happen?

10

Victim 1:  Well, there was once with [Victim 2].[4]  She was in the kitchen giving him head, in the kitchen.

The State:  Okay.  And when you say that – I think I know what you mean when you say that.

Victim 1:  Her mouth is going back and forth on the penis.

The State:  Okay.  And that would be Mr. Reynolds?

Victim 1:  Yes.

The State:  Okay.  And you –

The Court:  Who was the child?

Victim 1:  [Victim 2].

The Court:  [Victim 2].

The State:  Okay.  Any other time that you saw something happened?

Reynolds raised no objection to the trial court's comment.  On appeal, Reynolds argues that the trial court impermissibly commented on the evidence and tipped the scales against him.

We decline to exercise our discretion to review for plain error as there is no basis for believing a manifest injustice or miscarriage of justice has resulted from the trial court's limited involvement in the trial testimony of Victim 1.

---

[4] The three bracketed references to Victim 2 during this exchange were references to Victim 2's first name, which we do not provide in this opinion due to numerous provisions of law regarding confidentiality.  *See* §§ 595.226 and 509.520.

## Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.