**STATE of Missouri, Appellant,**

v.

**Andrew Trae JACOBSON, Respondent.**

**WD 79472**

Missouri Court of Appeals,
Western District.

OPINION FILED: May 16, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2017

Christine K. Lesicko, Jefferson City, MO, for appellant.

Robert H. Schnieders, Oak Grove, MO, for respondent.

Before Division Three: Karen King Mitchell, Presiding Judge, Victor C. Howard, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

The State of Missouri ("State") appeals from the judgment of the Circuit Court of Saline County vacating the defendant Andrew Trae Jacobson's ("Jacobson") finding of guilt by a jury of the offense of armed criminal action. In its sole point on appeal, the State argues the trial court erred in *sua sponte* entering its judgment of acquittal following the jury's guilty verdict for armed criminal action associated with the accompanying felony conviction for second-degree assault because the record contains sufficient evidence to support the conviction. We reverse and remand for sentencing.

### Factual Background

This appeal arises out of the prosecution of Jacobson for a hit-and-run incident occurring on January 13, 2015. Jacobson, who was 18 years old, began drinking alcohol alone at 2:00 a.m. on the morning of January 13. At approximately 3:00 p.m., he picked up a friend in his Toyota truck, which was "lifted" above its factory height. After driving around for a while, the two drove to a lake to drink alcohol and listen to music. While at the lake, they drank rum mixed with soda.

At approximately 5:30 p.m., the two boys decided to go to the Slater High School basketball game. Jacobson drove his truck to the game and parked in a gravel parking lot near the school. The two boys admitted that they were intoxicated. Approximately an hour after arriving at the school, Jacobson decided that he was too intoxicated to be at the school and left alone in his truck.

Olivia Knox ("Victim") arrived at the high school with her nine-month old daughter to watch a game. The Victim parked her car and proceeded to walk toward the gym holding her daughter in her arms. She approached a street at an intersection over which she had to cross to get from the parking lot to the school. She looked both ways and saw headlights pulling out of a parking lot but thought that the vehicle was stopping behind some busses parked at the school. The Victim proceeded to cross the street and right before she reached the curb she saw the lights of Jacobson's truck right next to her. Realizing she and her daughter were going to be hit by the truck, the Victim got down to try to protect her daughter. The truck's front and back tires proceeded to roll over her back.

Two bystanders, who did not see the incident but heard a scream, came to the Victim's aid. One of the men tried to chase down the truck, but it sped away. The Victim and her daughter were taken to the hospital. The Victim suffered from spinal and rib fractures, in addition to lacerations and a hematoma. At the time of trial, the Victim could walk but still suffers from constant pain and a limited range of motion. Amazingly, the baby did not sustain any serious injuries.

Law enforcement received information that identified Jacobson as a possible suspect involved in the incident. An officer drove to his home and saw his pickup truck in the driveway, which matched the description given by the bystanders. When Jacobson came out of the house to speak with the officer, the officer smelled alcohol on his person. Jacobson admitted that he had been drinking but stated he had started drinking when he returned home that evening. Jacobson admitted that he had been at the basketball game but denied any knowledge of a hit-and-run. The officer looked at Jacobson's truck and found a baby hat stuck in the front grill that the

Victim's daughter had been wearing that evening. Jacobson was taken to the police station for questioning and field sobriety tests were performed, followed by a breath sample test to determine his blood alcohol content ("BAC"). At 7:43 p.m., Jacobson's BAC was .177.

In a written statement provided to police, Jacobson stated that he had been drinking alcohol since 2:00 a.m. on January 13 and admitted he was intoxicated when he drove to and from the high school. Jacobson did not remember the incident but did remember that he had felt a bump and thought he had hit a dog but he did not stop and check. At trial, Jacobson testified that he thought he had hit an animal but was embarrassed and did not stop. Instead, he slowed down and looked back. When he did not see anything, he drove home. Jacobson admitted that he was aware that the intersection where he hit the Victim is a high-traffic area for pedestrians, especially between games. In addition, he testified that he was aware that his line of sight from his truck was altered due to the lift kit installed on his truck which raised the body seven inches above the tires. At the time of the accident, his music was turned up loudly.

The jury acquitted him of endangering the welfare of a child, leaving the scene of an accident, and one count of armed criminal action but found Jacobson guilty of one count of second degree assault, section 565.060.4 [1] and the related armed criminal action count, section 571.015.1. The jury recommended a sentence of one year in the county jail for assault in the second degree and three years for armed criminal action. Notwithstanding the jury's verdict

on the armed criminal action count, the trial court *sua sponte* entered a judgment of acquittal for that count at the time of sentencing. Jacobson was sentenced to one year in the county jail for second-degree assault.

The State now appeals. [2]

## Point One

In its sole point on appeal, the State argues that the trial court erred in *sua sponte* entering a judgment of acquittal following the jury's verdict for armed criminal action associated with the felony charge of second-degree assault because the record contains sufficient evidence that Jacobson committed the offense in that he purposefully and knowingly drove his lifted pickup truck through a busy intersection when he was highly intoxicated and, while doing so, he hit and injured a woman carrying her nine-month-old child.

## Standard of Review

Where the trial court has entered a judgment of acquittal after a jury has found the defendant guilty of a charge, "[t]he issue is whether or not the evidence, viewed in the light most favorable to the jury's verdict, was sufficient for reasonable persons to find the defendant guilty beyond a reasonable doubt with matters of credibility and inconsistencies in testimony being left to the jury's consideration." *State v. Magalif*, 131 S.W.3d 431, 434 (Mo. App. W.D. 2004). As with other challenges to the sufficiency of the evidence to support a conviction,

---

**1.** All statutory citations are to RSMo 2000 as updated through the December 31, 2016 cumulative supplement, unless otherwise indicated.

**2.** The State is permitted to appeal where, as here, a jury has found the defendant guilty of the charge but the court has entered a judgment of acquittal notwithstanding the verdict. *See State v. Magalif*, 131 S.W.3d 431, 433-34 (Mo. App. W.D. 2004).

all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence. [*State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010).] All evidence and inferences to the contrary are disregarded. *Id.* "When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (internal quotations omitted). "[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008) (internal quotations omitted). *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). Questions of statutory interpretation are a matter of law, however, and are reviewed *de novo. State v. Chambers*, 437 S.W.3d 816, 818 (Mo. App. W.D. 2014).

### Analysis

Jacobson was convicted of second-degree assault pursuant to section 565.060.1(4). That section provides that a person commits the crime of assault in the second degree if he, "[w]hile in an intoxicated condition or under the influence of controlled substances or drugs, operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause physical injury to any other person than himself." Section 565.060.1(4).

■ Section 571.015.1, the armed criminal action statute, provides that, subject to certain exceptions not relevant here, "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action [. . .]." In order to be convicted of armed criminal action, the State must prove the defendant had the "culpable mental state of acting purposely or knowingly." *See State v. Williams*, 126 S.W.3d 377, 382 (Mo. banc 2004). The State argued at trial, and argues on appeal, that Jacobson acted knowingly with respect to the armed criminal action charge. Pursuant to section 562.016.3,

[a] person 'acts knowingly', or with knowledge:

(1) With respect to his or her conduct or to attendant circumstances when he or she is aware of the nature of his or her conduct or that those circumstances exist; or

(2) With respect to a result of his or her conduct when he or she is aware that his or her conduct is practically certain to cause that result.

The trial court provided two grounds for its decision to set aside the jury's guilty verdict for armed criminal action. First, the trial court expressed doubt regarding whether a conviction on an underlying felony with a culpable mental state of criminal negligence could be used as the basis for an armed criminal action conviction that requires a culpable mental state of acting purposely or knowingly. Second, the trial court found that there was insufficient evidence to show Jacobson's truck was a "dangerous instrument." We will take each argument in turn.

■ First, the trial court erred in finding that an underlying felony with a culpable mental state of criminal negligence cannot be used as the basis for a charge of armed criminal action which has a higher mental state. This question was squarely addressed by our Missouri Supreme Court in *State v. Belton*, 153 S.W.3d 307, 310-311

(Mo. banc. 2005). In *Belton*, the defendant was charged with involuntary manslaughter in the first degree, which required the culpable mental state of recklessness. *Id.* at 310. He argued that the felony could not be used to support a conviction for armed criminal action because armed criminal action requires the culpable mental state of acting knowingly or purposely. *Id.* The argument was rejected by the Supreme Court, which stated that because the armed criminal action statute "specifically provides that it is applicable to 'any felony' committed with a deadly weapon, the culpable mental state of the underlying felony is irrelevant." *Id.* The Supreme Court continued in that case to find that "[u]nder this Court's interpretation, [the defendant] acted recklessly in committing the offense of involuntary manslaughter but acted knowingly in committing the offense of armed criminal action." *Id.* at 310-11. The Supreme Court affirmed both convictions. *Id.* at 311.

Jacobson argues that *Belton* is distinguishable from this case because in *Belton* the defendant was reckless with a deadly weapon, a gun, and not a dangerous instrument. He also argues it would be an unjust result to allow an armed criminal action charge to be based on an underlying felony with a lesser culpable mental state when the armed criminal action is perpetrated through the use of a dangerous instrument as opposed to a deadly weapon. We disagree and conclude that *Belton* does apply in these circumstances. First, the Missouri Supreme Court unequivocally stated that the culpable mental state for the underlying felony offense for armed criminal action is *irrelevant*, as the statutory language in the armed criminal action statute explicitly states that is applies to "any felony." *Belton*, 153 S.W.3d at 310. The armed criminal action statute makes no distinction between a deadly weapon and dangerous instrument in this regard as it

applies to "any felony" committed "by, with, or through the use, assistance, or aid of a *dangerous instrument or deadly weapon.*" *See* section 571.015.1 (emphasis added). Nothing in the Court's opinion in *Belton* suggests that any such distinction would be justified, and we find no rational basis for such a distinction.

We find Jacobson's argument, that it would be unjust to use a felony with a lesser culpable mental state as the basis for an armed criminal action charge when the armed criminal action is perpetrated through the use of a dangerous instrument, unpersuasive. We see no logical reason why such a distinction should be made. Both means by which a person could commit armed criminal action, through the use of either a deadly weapon or dangerous instrument, requires the same culpable mental state, knowing or purposeful action. The jury instruction here required the jury to find that, in addition to committing the underlying felony of assault in the second degree, that Jacobson committed the offense "by or with or through the knowing use or assistance or aid of a dangerous instrument." The underlying felony, as explained by the Supreme Court in *Belton* is irrelevant to this determination. We conclude that the first ground cited by the trial court to set aside Jacobson's conviction for armed criminal action was in error.

The second reason given by the trial court to set aside the jury's conviction for armed criminal action was that the trial court found insufficient evidence that the manner in which Jacobson's vehicle was used made it a dangerous instrument. Section 571.015.1 provides that, subject to certain exceptions not relevant here, "any person who *commits any felony* under the laws of this state *by, with, or through the use, assistance, or aid of a dangerous*

*instrument* or deadly weapon is also guilty of the crime of armed criminal action [. . . .]" (emphasis added). "Dangerous instrument" is defined by section 556.061(20) as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." "A car can be a dangerous instrument when used in circumstances where it is readily capable of causing death or serious injury." *State v. Fortner*, 451 S.W.3d 746, 758 (Mo. App. E.D. 2014) (citing *State v. Williams*, 126 S.W.3d 377, 382 (Mo. banc 2004)). The State need not prove Jacobson subjectively intended to cause death or physical injury through the use of his vehicle, but that he "knowingly used [his] vehicle in a manner or under circumstances in which it was readily capable of causing death or serious physical injury." *Fortner*, 451 S.W.3d at 758.

The evidence at trial established that Jacobson knowingly drove to the basketball game in his truck in a *highly* intoxicated and likely a sleep-deprived condition (he had been drinking since 2:00 a.m. and the record does not reflect when he last slept). He left the basketball game because he knew he was too intoxicated to be at the school and chose to leave at a time when the road on which he hit the Victim would have had substantial pedestrian traffic because it was between games. The Victim had walked almost all of the way across the street before being hit, giving Jacobson time to have observed her in the roadway. His truck had been altered in a manner that obstructed his line of sight to things in front of the truck and his music was turned up loudly. Jacobson knew that he had hit *something* with his front tires but continued to drive over the object with his back tires. Jacobson paused after hitting the Victim and her child, but as bystanders called for him and tried to apprehend him, he sped away. He was so highly intoxicated that he stated he had almost no memory of the incident and he lied to law enforcement when questioned about his activities that day. The operative question is whether Jacobson used his vehicle in a manner *or under circumstances* in which it was readily capable of causing death or serious physical injury. The answer to that question, based on the evidence and inferences favorable to the State, is yes.

▪ Contrary to Jacobson's argument on appeal, it is not the mere fact that he was involved in an accident while operating a vehicle while intoxicated that supports his conviction for armed criminal action but the operation of that vehicle, while intoxicated, *in addition to* the extensive attendant circumstances, explained above, that made his vehicle readily capable of causing death or serious physical injury. To be clear, not every instance of a person being involved in an injury accident while driving while intoxicated will automatically support an armed criminal action conviction. We reach our decision based upon the unusual facts of this case. In addition to Jacobson's severe intoxication, he operated his vehicle at night in an area he knew to be highly trafficked by pedestrians under circumstances where both his sight and hearing were knowingly impaired. The fact that he lied to law enforcement about his activities suggests he was, in fact, aware of the dangerous nature of his conduct. This Court does not act as a super juror but only can consider, based on the evidence presented at trial, whether a reasonable juror could find beyond a reasonable doubt that Jacobson's vehicle was a dangerous instrument under the facts of this case. We conclude that there was sufficient evidence presented at trial to support the jury's finding that Jacobson used his vehicle as a dangerous instrument in the commission of a felony. The second ground cited by the trial court for setting aside Jacobson's con-

viction for armed criminal action was also in error.

We conclude that the trial court erred in setting aside Jacobson's conviction for armed criminal action. The point is granted.

## Conclusion

The judgment of the circuit court, which acquitted Jacobson of the armed criminal action count and for which the jury found him guilty, is reversed, and the case remanded for sentencing on that count. In all other respects, the judgment of the trial court is affirmed.

All concur