

# In the Missouri Court of Appeals
# Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112614 |
| | ) | |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 2322-CR00297-01 |
| | ) | |
| DANIEL RILEY, | ) | Honorable Michael W. Noble |
| | ) | |
| Appellant. | ) | Filed: June 10, 2025 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

### Opinion

On February 18, 2023, at 8:30 p.m., appellant Daniel Riley drove westbound on St. Charles Street approaching the intersection with 11th Street in downtown St. Louis City in an Audi SUV - without a license and with THC, fentanyl, and codeine[1] in his system – when he fully depressed the accelerator pedal increasing his speed from five to nearly fifty miles per hour, ignored the yield sign at 11th Street, and emerged suddenly onto 11th Street. At that moment, a second vehicle, northbound on 11th Street with the right of way and travelling just over the twenty-five miles per hour speed limit, collided with Riley's vehicle. The resulting crash sent his vehicle tumbling west on St. Charles Street where it struck the teenage Victim as she walked with her parents towards their parked vehicle amputating both of her legs.

---

[1] At trial, the toxicologist testified that fentanyl causes drowsiness to the point where it is hard to stay conscious, codeine causes drowsiness and confusion, and THC causes dizziness, drowsiness, confusion, and loss of awareness.

The State charged Riley with felony second-degree assault (count I), felony armed criminal action (ACA) for committing the second-degree assault with the knowing use of a dangerous instrument (count II), two counts of misdemeanor fourth-degree assault for the initial collision with the second vehicle's Driver and Passenger (counts III and IV), and misdemeanor driving without a valid license (count V). A jury found Riley guilty on all counts except count IV (assault as to Passenger) and the trial court sentenced him to prison for six years and three months on count I, eleven years and eight months on count II, and ten months on count III with the sentences to run consecutively. The court also fined Riley $500 on count V.

Riley brings three points of error in this appeal. First - that the trial court erred in denying his motion for judgment of acquittal and in sentencing him on the ACA conviction because the State did not prove beyond a reasonable doubt that he acted with the requisite mental state for that crime. Riley claims the State proved that he acted only "recklessly," when the ACA charge requires the State to prove he acted "knowingly." We deny point one because the State adduced sufficient evidence for the jury to find that Riley knowingly used his vehicle as a dangerous instrument "under circumstances … readily capable of causing death or other serious physical injury." Section 556.061(2) RSMo Cum. Supp. 2020.[2]

Next, Riley claims the trial court abused its discretion in denying his oral continuance motion after the State, three days before trial, disclosed fifty-two pages from the State's toxicologist's file. Riley claims that the new materials, which are not in our record, included the levels of fentanyl, codeine, and marijuana in Riley's blood at the time of the crash and that the disclosure prejudiced his trial strategy because he had planned to establish during cross-examination that the State's toxicologist did not know the levels of any of those substances found in Riley's blood. The failure to include in our record the fifty-two pages at issue hinders

---

[2] All statutory references are to RSMo (2016) unless otherwise indicated.

review of this point. Rule 81.12(a). Nevertheless, we conclude that the trial court acted consistent with its broad discretion when it sought to strike a balance by denying Riley's continuance request but then also excluding the fifty-two pages from evidence and prohibiting the State from eliciting any testimony as to the levels of those substances in Riley's blood.

Lastly, Riley claims the trial court erred in excluding evidence that at some point after the crash the City changed the yield sign to a stop sign on westbound St. Charles Street at 11th Street. Because Riley did not preserve this issue by making an adequate offer of proof, we decline to review this point under our plain error review standards because the trial court did not evidently, obviously, or clearly err with respect to the post-crash sign change.

## Background

### *The Collision*

On the evening of February 18, 2023, 11th Street in downtown St. Louis was one-way northbound at St. Charles Street. There was no "stop" or "yield" sign such that 11th Street drivers had the right of way there. Westbound St. Charles Street drivers had a yield sign at 11th Street before either turning right onto 11th Street or proceeding straight on St. Charles Street. For the two drivers involved in this case, a large building extended to the 11th Street and St. Charles Street sidewalks adjacent to the intersection. As a result, neither driver could see the other until either emerged from behind the building.

Just before the crash, Driver and Passenger were headed north on 11th Street on their way to dinner. Driver's vehicle's airbag control module put Driver's speed at twenty-nine miles per hour five seconds before impact. The speed limit on 11th Street was twenty-five miles per hour. The module showed Driver hit her break pedal two seconds before impact slowing to twenty-seven miles per hour. Riley's airbag control module had him accelerating from five miles per hour five seconds before impact to forty-five miles per hour at impact.

3

An eyewitness, situated by an apartment building on St. Charles Street near the intersection with 11th Street, heard Riley's car "blowing by" him at an estimated fifty miles per hour. He watched Riley enter the intersection and he saw the collision which sounded like "an explosion." For her part, Driver told the responding police officers she did not see Riley's car before the crash.

Victim, who was walking southbound on 11th Street to her family's car parked on St. Charles Street, heard a loud engine roar just before the crash. Victim's father reached to pull her out of the way, but Riley's vehicle yanked her from his arms and pinned her against a parked car at the northwest corner of the intersection. Riley's vehicle ended up on its roof halfway down the next block of St. Charles Street west of the intersection.

The State's accident reconstructionist testified that eighty-nine feet before the point of impact Riley fully depressed the accelerator and then hit his break pedal for one and a half seconds before impact which decreased his speed from 38.69 miles per hour to 38.077 miles per hour. He further testified that Driver had 1.1 seconds to see Riley before the collision which was not enough time for her to respond. The reconstructionist opined that Riley violated the St. Charles Street yield sign and that St. Charles Street drivers had limited sight distance onto 11th Street which made the intersection hazardous.

*The Toxicologist's File and Riley's Continuance Request*

Riley's post-accident blood draw was positive for THC, fentanyl, and codeine. Ten months before trial, the State disclosed to Riley two toxicology reports which contained these findings but not the specific amounts of those substances. Then, on February 29, 2024, just three days before trial, the State disclosed fifty-two pages which it characterized as a "Toxicology Expert File and CV." The State explained that this 11th hour disclosure occurred because it had just learned of the file during a meeting with its criminalist and that it did not intend to offer the evidence at trial. The February 2024 disclosure is not in our record.

4

The State described the disclosure as the toxicologist's complete file materials and not a new report while Riley claims it was a new report. The State claims the file described the testing machine's calibration, the threshold levels for a substance to be detected, and the State's testing standards.

In his continuance request, Riley argued that because the file purportedly contained the *levels* of THC, fentanyl, and codeine in his system, information previously unknown to him, he needed time to consult with an expert about what those drug levels might mean for his defense. The State denied that the substances' levels were included in the file.

The trial court denied Riley's continuance request but also ordered the new materials excluded from evidence. The court reasoned that even if Riley sought to bring in an expert to testify to specific drug levels, the court was not inclined to allow such testimony anyway. Riley then argued that the court's ruling deprived him of the ability to attack the toxicologist on cross-examination as to her ignorance of the drug levels because the original toxicology report did not indicate any levels. The court cautioned that such attack now would open the door to the toxicologist testifying as to levels.

*Evidence of the Yield Sign's Replacement*

Riley claimed that it intended to introduce evidence at trial through three St. Louis City traffic safety division employees that after the crash the City changed the yield sign at the intersection to a stop sign. Riley argued that the evidence was relevant to his argument that his conduct was only reckless. The court granted the State's motion in *limine* in which it argued this was not a civil case and that the City's theoretical comparative fault was irrelevant.

**Discussion**

I.

In point one, Riley alleges the evidence at trial proved he acted only *recklessly* in the operation of his vehicle, not *knowingly*, such that the State failed to prove he committed the

5

felony of armed criminal action. We disagree. The evidence at trial showed that Riley knowingly operated his vehicle under circumstances that are readily capable of causing death or serious physical injury.

*Standard of Review*

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016) citing *State v. Hunt*, 451 S.W.3d 251, 257 (Mo. banc 2014). This Court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences. *Id*. Contrary evidence and inferences are disregarded. *Id*. The Court will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences. *Id*.

*Culpable Mental State for an ACA Conviction*

Inasmuch as the legislature did not attach a specific culpable mental state to ACA in section 517.015.1 RSMo Cum. Supp. 2020, we must look elsewhere, specifically to section 562.021.3: "If the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposefully or knowingly; but reckless or criminally negligent acts do not establish such a culpable mental state." *State v. Williams*, 126 S.W.3d 377, 382 (Mo. banc 2004).

"Any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument … is also guilty of the offense of armed criminal action …." Section 571.015.1, RSmo Cum. Supp. 2020. A dangerous instrument is "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" Section 556.061(20), RSMo Cum. Supp. 2020. "The statutory definition of 'dangerous instrument' … requires only that the

6

defendant knows he is using the instrument under circumstances that are 'readily capable of causing death or serious physical injury' and does not require that the defendant have the subjective intent to use the object with an intent to cause death or serious physical injury." *Id*. at 384.

A car can be a 'dangerous instrument' when used in circumstances where it is readily capable of causing death or serious injury. *See State v. Jacobson*, 526 S.W.3d 228, 234 (Mo. App. W.D. 2017) ("In addition to Jacobson's severe intoxication, he operated his vehicle at night in an area he knew to be highly trafficked by pedestrians under circumstances where both his sight and hearing were knowingly impaired."); *State v. Fortner*, 451 S.W.3d 746, 758 (Mo. App. E.D. 2014) ("Defendant knowingly drove her car, while intoxicated, with the child as a passenger, on the highway, at a high rate of speed, onto an exit ramp, without applying the brakes, and striking several objects before crashing into a house."); *Williams*, 126 S.W.3d at 380 ("Williams knowingly employed his car as a dangerous instrument" when he "drove toward [victim], striking her and causing her to be thrown onto the hood of the car.")

This authority mandates our conclusion that the evidence supports the jury's finding that Riley, who had THC, fentanyl, and codeine in his system, knowingly used his vehicle in a manner readily capable of causing death or serious physical injury. According to Riley's vehicle's airbag control module, he fully depressed the gas pedal and accelerated from zero to forty-five miles per hour five seconds before the collision and applied his brake for only half a second before the collision resulting in a negligible decrease in speed from 38.69 to 38.077 miles per hour. An eyewitness testified that Riley's vehicle reached an estimated fifty miles per hour when it passed him. Further, the accident reconstructionist testified that Riley failed to yield as required to 11th Street traffic despite an office building blocking Riley's view of any northbound 11th Street traffic until Riley emerged from behind the building onto 11th Street. Victim's father

7

testified that "every street was completely packed" with parked cars and that foot traffic "was really busy."

We caution that it should be the uncommon case where a driver's conduct constitutes armed criminal action. But as the foregoing case examples demonstrate, sometimes the conduct warrants such a serious charge. Here, simply put, Riley's conduct was more than reckless driving.

Point denied.

## II.

Next, we address the trial court's denial of Riley's motion for a continuance made after the State's February 2024 toxicology disclosure. We find that the trial court properly exercised its considerable discretion because by excluding the late-disclosed evidence, the trial court fashioned an appropriate remedy that did not prejudice Riley.

"The decision to grant a continuance is within the sound discretion of the trial court." *State v. Edwards*, 116 S.W.3d 511, 535 (Mo. banc 2003). "An abuse of discretion occurs when a trial court's decision is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Harding*, 528 S.W.3d 362, 376 (Mo. App. E.D. 2017).

Rule 25.03(b)(6) requires the State to disclose "[any] reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons." *Id*. "Trial courts have discretion to determine whether a discovery rule has been violated … and to fashion an appropriate remedy in the event of a violation[.]" *State v. Mays*, 691 S.W.3d 347, 351 (Mo. App. S.D. 2024) (quoting *State v. Cross*, 421 S.W. 3d 515, 520 (Mo. App. S.D. 2013)). "[T]his Court will determine whether the trial court abused its discretion in 'such a way as to result in fundamental unfairness.'" *State v. Julius*, 453 S.W.3d 288, 296 (quoting *State v. Artis*, 215 S.W.3d 327, 337

8

(Mo. App. S.D. 2007). "Fundamental unfairness occurs when the state's failure to disclose results in defendant's genuine surprise and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." *Id*.

With these principles in mind, we turn to the record here and find that even if the State violated its disclosure obligations,[3] the court fashioned an appropriate remedy by excluding the evidence. *See Mays*, 691 S.W.3d at 351. And by moving forward with the trial with only the original toxicology reports being admissible, reports which Riley had for almost a year, no fundamental unfairness occurred.

Moreover, the absence from our record of these late-disclosed materials is fatal to Riley's point under Rule 81.12(a). The parties dispute the file's contents with Riley suggesting the file contained the quantity of each substance in Riley's blood and the State claiming it only contained detection standards. This is why we require parties to include in our record all materials necessary for our consideration of issues on appeal.

We deny point II.

### III.

In point III, Riley takes issue with the trial court's interlocutory order *in limine* to exclude any evidence that St. Lous City at some point after the collision replaced the *yield* sign with a *stop* sign. Riley contends the evidence was relevant to whether he acted knowingly or only recklessly. Riley failed to adequately preserve this point, but regardless, it is without merit.

In granting the State's pre-trial motion in *limine,* the trial court found to be irrelevant the evidence the City changed the yield sign, which Riley violated just before impact, to a stop sign. Then, during trial, Riley failed to call the City employees to testify regarding the change and

---

[3] The trial court made no finding whether this late disclosure violated the discovery rules.

failed to make an offer of proof as to what their testimony would have been.[4]  Thus, Riley has requested plain error review of this unpreserved claim.[5]

We find no evident, obvious, or clear error, or any error at all because Riley has presented no authority that such evidence was relevant to *any* issue in this criminal prosecution or that the signage at 11th Street would have made any difference to him as he floored his vehicle and erupted onto 11th Street at nearly fifty miles per hour.

**Conclusion**

Riley's convictions and sentences are affirmed.

_____

James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.

---

[4] We reject Riley's assertion that we can review this claim under the exception to the offer of proof requirement.  The exception requires (1) a complete understanding based on the record of what the excluded testimony would have been; (2) that the objection must be to a category of evidence rather than specific testimony; and (3) that the evidence would have helped its proponent.  *State v. Woods*, 357 S.W.3d 249, 253 (Mo. App. W.D. 2013).  Riley made none of this required record.

[5] Under certain circumstances, we may review unpreserved errors under our plain error standard of review.  *State v. Townsend*, 649 S.W.3d 72, 78 (Mo. App. E.D. 2022); *See State v. Speed*, 551 S.W.3d 94, 97 (Mo. App. W.D. 2018) (citing *State v. Clay*, 533 S.W.3d 710, 718 (Mo. banc 2017)); Rule 30.20.  Rule 30.20 states in relevant part that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."  *See Speed*, 551 S.W.3d at 98 (citing *State v. Taylor*, 466 S.W.3d 521, 533 (Mo. banc 2015)).

10